1                UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION-RIVERSIDE

4                   - - -

5      HONORABLE JESUS G. BERNAL, DISTRICT JUDGE PRESIDING

6                   - - -

7  UNITED STATES OF AMERICA,     )
                           )

8              Plaintiff,  )
                           )

9         vs.           )  No. EDCV 18-1005-JGB
                           )

10  CALIFORNIA STEM CELL TREATMENT )
    CENTER, INC., et al.,      )

11                        )
              Defendants.  )

12  _____)

13

14         REPORTER'S TRANSCRIPT OF ORAL PROCEEDINGS

15              Riverside, California

16             Monday, July 13, 2020

17                11:23 a.m.

18

19

20

21

22

23          PHYLLIS A. PRESTON, CSR, FCRR
         Federal Official Court Reporter

24        United States District Court
           3470 Twelfth Street

25      Riverside, California 92501
           stenojag@aol.com

```
 1   APPEARANCES:

 2


 3   For the Plaintiff: (Telephonically)

 4                        U.S. DEPARTMENT OF JUSTICE
                          Consumer Protection Branch
 5                        By:  NATALIE SANDERS
                               ROGER GURAL
 6                        Trial Attorneys
                          450 5th Street, NW, Suite 6400-South
 7                        Washington, DC 20530

 8
                          U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES
 9                        FOOD & DRUG ADMINISTRATION
                          By:  MICHAEL SHANE
10                             MICHAEL HELBING
                          10903 New Hampshire Avenue
11                        Silver Spring, MD 20993-0002

12


13


14   For the Defendants:

15                        VENABLE LLP
                          By:  CELESTE BRECHT
16                             MATTHEW GURVITZ
                          Attorneys at Law
17                        2049 Century Park East, Suite 2300
                          Los Angeles, California 90067

18


19


20


21


22


23


24


25
```

```
1              MONDAY, JULY 13, 2020; RIVERSIDE, CALIFORNIA

2                            -o0o-

3        THE CLERK:  Calling No. 8 on the calendar, EDCV

4  18-1005-JGB, United States of America v. California Stem Cell

5  Treatment Center, Inc.                                        11:23

6        Counsel, please state your appearances for the

7  record.

8        MS. SANDERS:  Good morning.  This is Natalie Sanders,

9  trial attorney with the United States Department of Justice in

10 Washington DC appearing on behalf of United States of America, 11:23

11 the plaintiff in this matter.

12       THE COURT:  Good morning.

13       MS. SANDERS:  Good morning.  Joining me on this call,

14 Your Honor, is Federal DOJ trial attorney Roger Gural.  He

15 started as my trial co-counsel on the matter.  And also joining 11:24

16 us are two attorneys from the U.S. Food and Drug

17 Administration, Michael Shane and Michael Helbing, and they are

18 serving as of counsel on this matter.

19       THE COURT:  Very well.  Thank you.  And good morning

20 to you all.                                                   11:24

21       MS. BRECHT:  Good morning, Your Honor.  Celeste

22 Brecht on behalf of the defendants.

23       MR. GURVITZ:  Good morning, Your Honor.  Matthew

24 Gurvitz also on behalf of the defendants.

25       THE COURT:  Good morning.  The matter is on calendar  11:24
```

1  today for the final pretrial conference.  I assume that both

2  sides will be ready to proceed to this court trial on

3  July 28th; is that correct?

4          MS. BRECHT:  Yes, Your Honor.

5          MS. SANDERS:  Well, Your Honor, the Government          11:24

6  certainly has been working diligently to prepare for trial and

7  we certainly are looking forward to conducting that trial very

8  shortly, but I did just want to flag that we do have some

9  concerns about an in-person trial if that were to be held in

10  the next two weeks.          11:25

11          THE COURT:  About a what trial?  You have some

12  concerns about a what trial you said?

13          MS. SANDERS:  An in-person trial.  To the extent that

14  Your Honor is contemplating that all of the counsel and

15  witnesses would appear in person for the trial in Riverside, we          11:25

16  do have some concerns about that, particularly in light of the

17  way the numbers seem to be trending in California right now.

18          THE COURT:  Right.  Well, I understand and share your

19  concerns, but I think there's things that we can do to assuage

20  your concerns.  One is, counsel here for the defendant and          11:25

21  every one present in court is wearing masks.  That's mandatory

22  in my court.  And any witnesses that testify will be wearing

23  masks.  And there is enough room in this courtroom for everyone

24  to socially distance.  So we are taking precautions.  There are

25  markers in the seating that indicate the spacing that is          11:26

1   required for people.  Since we're not having the jury trial

2   then those concerns regarding a jury are not present.

3          So if all of you are present, I guess that's four

4   attorneys, and you might have to like sit two in the front and

5   two in the back which may allow for social distancing.  So I          11:26

6   think there's enough space in this courtroom to both have

7   everybody wear a mask and have everybody social distance while

8   the proceedings take place.  So given that, are your concerns

9   any less or the same?

10          MS. SANDERS:  We certainly appreciate the thought and      11:26

11   attention that Your Honor has put into thinking about how we

12   can do this.  We would just flag whether now or a bit later

13   that we do have some witnesses who are not able to travel at

14   this time, and so we would need to talk about what arrangements

15   would be made for those individuals.                                  11:27

16          THE COURT:  And they're not able to travel for what

17   reason?

18          MS. SANDERS:  It varies.  So we have one witness,

19   Michelle Forrester, she is one of our FDA investigators who

20   inspected defendants' facilities.  She is out on leave and she       11:27

21   is not released by medical professionals to travel at this

22   time.

23          We have our CGMP expert.  She is the person who is

24   going to testify to the facts that underlie our adulteration

25   charges, and she also is not able to travel at this time.            11:27

1          And then finally, we have an additional expert,

2    Dr. Doran Fink, and he actually has important duties related to

3    the COVID-19 crisis, and so he does have a conflict with

4    particular days, and then because of additional child care and

5    other responsibilities that he has, he would prefer, if he has          11:28

6    to appear during the week of the 28th, to appear remotely.  And

7    specifically with respect to his conflicts, I can just inform

8    the Court that he is on the CDC advisory committee on

9    immunization practices, and he is an FDA-appointed

10   representative for that, and he is out of pocket all day on             11:28

11   July 29th and cannot be replaced because of his role on that

12   panel.  So he does have a conflict with a particular day and

13   then he also has a conflict with traveling more broadly.

14          So that's at least three of the Government's

15   witnesses who we anticipate have some challenges showing up in          11:28

16   person for the hearing.  And additionally, you know, I would

17   just underscore on their behalf that these folks would all be

18   flying in.  None of our witnesses are local to California.  So

19   these are going to be people coming in from Michigan, from

20   Kansas, from Texas, New Mexico, Virginia, Maryland, and                 11:29

21   Washington DC, and we do have concerns that some of them will

22   have cold feet, so to speak, even if they were previously

23   planning to testify in person.

24          I think the most recent numbers showing that

25   hospitalizations are going up, deaths are going up, cases of            11:29

1    COVID infection are going up, and in the past week saw the

2    deadliest two days of the pandemic back to back in the State of

3    California with the state official cases now surpassing

4    300,000.  It seems like we're actually perhaps in a worse

5    position than we were even back in March and earlier this year.    11:29

6            So I just want to be honest and transparent with the

7    Court and flag that, because I do think that's a concern for

8    every witness that will be traveling and remaining in

9    California and relying on public transportation, shared rides,

10   staying in hotels, and doing lots of things that increase their   11:30

11   own exposure to possible infection and, you know, could result

12   in either illness or sickness to them or even worse, you know,

13   requiring everyone else associated with this trial to

14   quarantine for some period.

15           So those are our concerns.  It's not that we are not     11:30

16   diligently preparing for trial and looking forward to trial.  I

17   think our concern is that we're in the middle of a pandemic

18   that seems to be getting worse, not better, and where,

19   potentially, we could look at other ways to do this trial that

20   would better protect people's health, or if we were able to      11:30

21   postpone it briefly --

22           THE COURT:  Okay.  I understand your concerns.  I

23   don't fault you or the witnesses for having such concerns

24   certainly.  So the alternatives to that is either, as you said,

25   either postpone the trial or have some kind of way where the      11:31

1  witnesses that you indicated would testify remotely by video

2  instead of live in court.

3           I guess the first question I have is, would the

4  defendants be opposed to such a procedure?

5           MS. BRECHT:  Your Honor, we would be definitely          11:31

6  opposed to continuing the trial given that this lawsuit has

7  dramatically impacted my clients' ability to conduct their

8  business, and it's been continued multiple times.  We're

9  cognizant of the health concerns and we've met and conferred

10 extensively with the Government, and we have no objection to    11:31

11 any witness or counsel appearing remotely, if they would like

12 to do so for, you know, protecting health concerns.

13          THE COURT:  Very well.  So I think that's the way to

14 go then, set up a system by which the witnesses that did not

15 wish to appear in person can testify through video, and I think 11:32

16 that's -- we have the capability of doing that here in the

17 courtroom.  And again, since it is a court trial and not a jury

18 trial then a lot of the concerns that would normally be

19 attendant to not in-person testimony are not present.

20          So are you then -- I guess the question comes back to   11:32

21 the plaintiff, are you comfortable then with the idea that you

22 would present at least some of your witnesses through video?

23          MS. SANDERS:  Well, we certainly appreciate that

24 accommodation, and if that's the way the Court wishes to

25 proceed, we would welcome that opportunity and we would want it  11:32

1  to be extended to any witness who has concerns and also any

2  counsel on this matter that has a concern.  I think that raises

3  a question of how we would go about doing that and how we would

4  work out the technical details.  We've begun to give some

5  thought to that, and I would just ask that we could have space          11:33

6  and opportunity to have our technical people connect with the

7  Court's technical people and make sure that we are able to do

8  this in a seamless and as nondisruptive of a manner conducive

9  to the conduct of the trial that Your Honor is expecting.

10        My co-counsel on this matter, Roger Gural, has given          11:33

11  some thought to some of the issues, and certainly we've had

12  discussions with defense counsel about some of the issues that

13  we might be faced with, and I think that we would just need

14  additional guidance from the Court to really make that a

15  reality, particularly where a number of our witnesses would be          11:33

16  doing this from home remotely.

17        THE COURT:  Right.  So I know it can be done because,

18  again, the Court has that capability, and I can have my clerk

19  and the Court's technical person consult with you and/or your

20  staff to perhaps give a trial run and see whether or not it can          11:34

21  be done as seamlessly as you say.

22        Also, if we run into some technical difficulties

23  after the beginning of the trial, I'll be flexible in giving

24  you time and/or resources to try to resolve those difficulties

25  so the testimony you wish to present is, in fact, presented.          11:34

1        So I think that sort of we have a working plan that

2   we will proceed with the trial on the 28th, and both sides will

3   have the flexibility to present any witnesses or counsel either

4   in person or remotely through video.  So I will keep that trial

5   date and direct both parties to confer with my deputy clerk        11:35

6   and, of course, staff, technical staff to make sure that all

7   technical difficulties are addressed so we can proceed.

8        Now I know there are some motions in limine pending.

9   I can tell you that all of the ones that have been submitted

10  will be denied, so that may cut down on the issues for trial       11:35

11  and the witnesses to be presented.

12       Normally in a case - and, again, this is difficult to

13  do -- I would set a time limit for both sides to present their

14  case or to respond to the other side's case.  I'm not going to

15  do that in this time because of, again, the difficulties we may    11:35

16  have with the video and the fact that video testimony may take

17  longer than usual just because of the remote nature of that

18  testimony and the difficulties that we may encounter.

19       But I will advise you that it is a court trial, so if

20  I find that somebody is testifying either repetitively or          11:36

21  testimony which I find not helpful or germane to the issues

22  presented, I will ask you to speed it up and/or call your next

23  witness.  So be very careful about what witness you elicit.  I

24  saw the witness list.  The plaintiff's witness list is just too

25  long.  I don't anticipate that all of those people would           11:36

 1    testify given what I think are the narrow issues in the case.

 2          So be conscious about which testimony you wish to

 3    present and make sure that that testimony is relevant to the

 4    issues of the case and not unnecessary background or

 5    unnecessary any relevant considerations such as the safety of          11:37

 6    the procedure form.  So we may cut down on everybody's time by

 7    doing that.

 8          I will give you what my rules of court are in case

 9    you are present in court, and I stick with these pretty

10    religiously, and every judge that I know likes an orderly          11:37

11    trial.  I think I'm sort of in the middle of being controlling

12    or not.  I wish to have you have the freedom to present your

13    case but I want it done in an orderly manner.

14          So these are sort of my rules of court and counsel

15    behavior during the trial.  You must --          11:37

16          MS. BRECHT:  Your Honor, may I sit?

17          THE COURT:  You may sit.

18          Rule No. 1 is, you must address the witness in one of

19    two ways, either by their last name or by their first and last

20    name together.  Don't address a witness only by their first          11:38

21    name.  The exceptions to that are minors and to avoid confusion

22    with multiple witnesses having the same last name.

23          If you're in court, you stand when you address the

24    Court even if it is to say a single word.

25          Only one attorney per side can both examine and          11:38

1   object to the other side's examination.  So if one attorney

2   examined the witness, co-counsel cannot then object to the

3   other side's examination.  Only one attorney does that.  That

4   cuts down on the confusion.  That's also the case, and I don't

5   think that will be the case in this case, but if we have any         11:38

6   sidebars, which we won't because its not a jury trial, then one

7   attorney argues the point.  I don't want multiple attorneys per

8   side arguing the same point.

9           Obviously, do not walk in the well or allow anybody

10  else to walk in the well.                                           11:39

11          Do not bring food into the courtroom.  You may bring

12  something to drink, but do not bring food into the courtroom.

13  Do not eat your lunch in the courtroom.  There are other places

14  in the courthouse where you can have lunch.

15          If a witness is testifying live, do not approach that       11:39

16  witness unless you first ask for permission to do so and I

17  grant it.  My normal practice is not to let you approach the

18  witness physically but to hand any document or exhibit to my

19  deputy clerk who will then himself hand it to the witness.

20          If you wish to object, you stand and you say the word       11:39

21  "objection," and you state the legal basis for the objection.

22  You do not argue.  Now, in this, I may give you a little more

23  flexibility because the jury is not present, but still, do not

24  argue unless you ask and I give you permission to argue the

25  objection.                                                          11:40

1          Also, be conscious what is and what is not a legal

2    objection, okay?  An objection saying "improper," that's not a

3    legal basis for an objection.  You have to give me a legal

4    basis for the objection.

5          Do not publish an exhibit unless you've first          11:40

6    identified it with a unique number, laid its foundation, or

7    told me that the other side agrees to its admission and ask for

8    it to be introduced into evidence.  After I introduce it into

9    evidence, you may go ahead and question the witness about the

10   substance of that document.                                   11:40

11         When court is in session, you must address me and not

12   each other.  So do not break into impromptu conversations with

13   opposing counsel even if it is to try to resolve an issue which

14   needs a resolution.  What you do is, you ask for permission to

15   confer.  I will always grant it.  You then confer and tell me   11:41

16   what, if anything, has been resolved.

17         When you are examining a witness or delivering your

18   opening or closing statements, you do so from the lectern.  Do

19   not pace back and forth or wherever from the lectern.  You must

20   remain at the lectern or within one arm's length of it while    11:41

21   you speak.

22         If you wish to exclude any witnesses then please do

23   so at the beginning of the trial.  I typically don't exclude

24   parties or experts during testimony by other witnesses.

25         So those are the general rules.  All the other ones      11:42

1   apply to when jurors are present.  So be conscious of those

2   rules, and I think the trial will go much more smoothly.

3         I intend to issue the ruling on the motions in

4   limine, which you already know what it is, but I'll issue a

5   written ruling probably this week.                              11:42

6         So is there anything else that we need to discuss

7   before we convene on the 28th?

8         If for some reason either side encounters technical

9   difficulties after consulting with my staff which would make it

10  improbable that we can have a smooth trial, then please alert   11:42

11  my staff or file some kind of notice of that, and I will

12  consider either postponing the trial or some other measure.  I

13  certainly do not want to burden any side from presenting their

14  case.  So if the technical difficulties cannot be resolved, I

15  guess I will have to continue the trial, but I do not want to.  11:43

16        Anything else by either side that they wish to bring

17  up before we adjourn?

18        MS. BRECHT:  Your Honor --

19        MS. SANDERS:  Thank you, Your Honor.

20        THE COURT:  Let the plaintiff go first.  By the         11:43

21  plaintiff.

22        MS. SANDERS:  Thank you, Your Honor.  You touched on

23  a number of points when you were reviewing the rules of court.

24  I just want to flag for Your Honor's consideration that we may

25  need to talk about the specifics of a protocol or a plan with   11:43

how you would handle some of those rules of court with the

witnesses who are appearing remotely.  So, for example, a

sidebar, that we want to make sure that the witness isn't able

to listen in on or, you know, how we go about presenting

exhibits to that witness who is only appearing by video and

details like that.  If Your Honor has a preference for how we

bring those kinds of issues to your attention separate and

apart from just making sure that the technology works, you

know, we will be sure to comply with whatever Your Honor would

want us to do.  But I do want to make sure that some of those

things that you mentioned, we are able to be consistent with

our virtual witnesses as well as the --

THE COURT:  I understand.  So I think we have the

technology to mute the witness video while we discuss other

matters, so I think that can be done.  But, again, the

specifics of that you will have to discuss with my clerk and my

IT person.

As to the exhibits that will be presented and will be

introduced through specific witnesses, then I suggest you talk

with opposing counsel and have a method by which the exhibit

that will be received, the witness has a copy and there is some

kind of verification that the exhibit which you're introducing

is the same one that the witness has with him or her, either by

declaration or some other form, and then I think we can proceed

that way.  But there has to be some kind of verification,

 1  preferably under oath, by somebody that the exhibit that is

 2  being used by the questioner is the same exhibit that is in

 3  front of the witness, but I think those things can be worked

 4  out.

 5       Any other concerns?                                    11:45

 6       MS. SANDERS:  I do.  I do.  You also mentioned the

 7  importance of being selective with the trial testimony that's

 8  presented, and we certainly will be sure to abide by the

 9  Court's recommendation there.  I do just want to clarify that

10  the Court still intends for the Government to put on all of the  11:45

11  evidence underlying the elements of this claim.  I know when we

12  posed this question in the motion for clarification, the Court

13  was very clear that it was expecting the Government to put on

14  its entire case, and so I do want to make sure that at the end

15  of our trial process that we have a record that contains       11:46

16  evidence on every claim that the Government bears the burden of

17  establishing at trial.  That's important in the event that

18  there perhaps may be an appeal taken by either side, we just

19  want to ensure that our record is complete.

20       THE COURT:  Certainly.  It's not my intent in any way   11:46

21  to limit you or restrict you from doing that, presenting

22  evidence regarding every claim to which you have a burden of

23  establishing.  I wasn't referring to that.  I was highlighting

24  more sort of what I believe to be irrelevant testimony or

25  repetitive or duplicative testimony since there's going to be  11:46

1   multiple witnesses perhaps testifying about overlapping issues.

2            MS. SANDERS:  Fair enough.  Thank you, Your Honor.

3            And does Your Honor contemplate that the trial will

4   be broadcast to the public in some way?

5            THE COURT:  No.                                          11:47

6            MS. SANDERS:  Okay.  Fair enough.

7            THE COURT:  I mean, anybody can come in.  Its a

8   public trial, but it's not a publically broadcasted trial.

9            MS. SANDERS:  Understood.  And with respect to

10  information that the parties contend should be protected from   11:47

11  disclosure in some way, whether it was confidential commercial

12  information that the defendants may seek to protect or

13  information that is in a patient's medical record and that is

14  otherwise subject to nondisclosure, how does the Court prefer

15  that the parties handle that?                                   11:47

16           THE COURT:  So the best way I think to handle that is

17  handle it by exhibit by exhibit when the time comes.  Perhaps

18  before the witness is going to testify about that particular

19  exhibit then we can have a conversation about what should be

20  sealed and what can remain public.  Obviously, there is a       11:48

21  preference and a strong preference for public access to the

22  exhibits.  It is a public trial after all.  But, obviously, if

23  there is some sensitive information of a personal nature, you

24  can either redact that from the exhibit that is to be

25  introduced or have certain portions or all of the exhibit be    11:48

1    introduced under seal.

2           MS. SANDERS:  Thank you, Your Honor.  Those are all

3    my questions at this time.

4           THE COURT:  Very well.  For the defendants, any

5    questions, clarifications?                                    11:48

6           MS. BRECHT:  Yes, Your Honor.  One issue which Your

7    Honor touched on was the length of the Government's exhibit

8    list, and we've tried to meet and confer with the Government to

9    figure out which of the 23 -- I'm sorry, the witness list, not

10   exhibit list.                                                 11:49

11          THE COURT:  Right.

12          MS. BRECHT:  We tried to meet and confer with them to

13   figure out which of the 23 witnesses they actually intend to

14   call just in connection with trial preparation and then also

15   time limits.  Is there any deadline that Your Honor could give  11:49

16   or additional guidance or instruction to actually get this list

17   to come down to a reasonable size and/or could we get an order

18   that at least three days in advance of when the Government is

19   going to call these witnesses that we get notice of which

20   witnesses will be called?                                     11:49

21          THE COURT:  So there is a couple of ways that we can

22   address that.  One is, you know, I will issue the motions --

23   the ruling on the motions in limine.  That may narrow down the

24   testimony and/or the number of witnesses.  The other rule that

25   I generally impose on both sides is to alert the opposing side  11:49

1    the night before by 6 p.m. of the witnesses that the other side

2    intends to call the following day.  So that way you're not in

3    the dark about who may or may not testify.  So that would give

4    you some indication.  Obviously, they're not going to be able

5    to call 20 witnesses in a day.  So if I order them to give you          11:50

6    an indication who they anticipate calling the next day, you'll

7    have a good idea what witnesses will testify and what their

8    testimony will be having previously deposed those witnesses.

9              MS. BRECHT:  Thank you, Your Honor.

10             MS. SANDERS:  Your Honor, may I --                             11:50

11             THE COURT:  Hold on.  The defendant is not done.

12             MS. BRECHT:  The other issue, in connection with

13   witnesses, is that the Government and the defense have

14   witnesses that overlap.  So, as an example, Dr. Lander and

15   Dr. Berman and Sean Berman, and so in hopes of supporting         11:50

16   efficiency, I would request that whenever the Government calls

17   Dr. Lander, Dr. Berman, and if they call Sean Berman in their

18   case-in-chief, if I could either do my direct examination first

19   or if my examination could be not limited to whatever the scope

20   of the Government's direct is so that each of those witnesses          11:51

21   is only called once as opposed to being called twice, I think

22   especially because it's a bench trial.

23             THE COURT:  Right.  So that is granted.  Feel free to

24   exceed the scope on the other side.  And I will give each side

25   -- what I normally do is, I give each side two examinations per         11:51

1  witness so you're able to respond.  So if the plaintiff calls a

2  witness, they will direct and redirect, the defendant would

3  then cross/direct and recross.  So you have, both, two shots,

4  an initial shot at the witness and then a response with a

5  second examination.                                          11:51

6           MS. BRECHT:  Thank you, Your Honor.

7           THE COURT:  So back to the plaintiff.  Ms. Sanders,

8  do you have any other concerns?

9           MS. SANDERS:  Well, Your Honor, would you entertain

10  briefly being heard on the issues that defense counsel just   11:52

11  raised, because they touch on a number of important points?

12           THE COURT:  What are your concerns regarding that?

13           MS. SANDERS:  Okay.  So with respect to the idea that

14  defense counsel will exceed the scope of direct and wish to

15  question Dr. Berman, Dr. Lander, or any other of the defense  11:52

16  witnesses beyond the scope of the Government's testimony, this

17  seems to be an attempt to have the Court rule on their request

18  for bifurcation.  And, Your Honor, we don't think that is

19  appropriate in this case for a number of reasons.

20           Defendants disclosed their witnesses to us as fact   11:52

21  witnesses, and we intend to perhaps call one or more of them as

22  fact witnesses.  What we don't want to do is have them then lay

23  out their defense in the middle of our affirmative case.

24           Generally speaking, when it comes to issues of

25  bifurcation, which is what her request really touches on, you  11:53

1    generally bifurcate by having liability established in the

2    first instance and then, only if that's been established,

3    having someone present a defense or having someone present

4    testimony as damages.

5         What defense counsel just suggested is that Your        11:53

6    Honor put the cart before the horse.  In other words, we'll be

7    at a point in our potential examination where we won't have

8    even established that the FDCA has been violated.  We are

9    simply trying to get a number of facts on the record so that

10   Your Honor can have a normal examination of the Government's   11:53

11   case and actually understand what the Government has alleged

12   with respect to the FDCA claims.

13        THE COURT:  I think the dangers which you highlight

14   would be more salient in a jury trial.  I think I can keep

15   straight what goes to the case-in-chief and what goes to a     11:54

16   defense and whether or not one or the other or both have been

17   established.  So I don't see a danger of having that testimony.

18   I'm not going to be prejudiced by testimony of a defense in

19   determining whether or not you state your case.  So I think

20   we're going to do it that way.                                 11:54

21        If you wish, you have the chance to recall witnesses,

22   so you can, after the testimony is done of your witness, in

23   rebuttal, you may recall a witness if you think something has

24   been missed or something needs to be clarified in light of the

25   examination that the defendants conducted.  So you'll have     11:54

1    plenty of opportunity to make clear what testimony you wish to

2    have the Court pay attention to.  And you, as the plaintiff,

3    have the exclusive right to call witnesses on recall.  So I

4    think the dangers that you highlight are not going to be real

5    dangers during the trial.                                    11:55

6          Anything else?

7          MS. SANDERS:  One other point about narrowing down

8    the Government's witness list.  We've had a number of

9    conversations off line with defense counsel about the fact that

10   nine witnesses on that list are associated with the defendants, 11:55

11   seven of whom are nonparty witnesses, and we have stressed to

12   them on multiple occasions that we don't intend to call those

13   witnesses in our case-in-chief but would purely reserve them

14   for rebuttal in the event that we need them.

15         We do need to serve subpoenas on those nonparty         11:55

16   witnesses.  We asked defense counsel if they could accept

17   service of these subpoenas of these individuals that are

18   employees of or otherwise associated with the defendants and

19   they did decline.  So I just want to flag for Your Honor that

20   we are working to serve these subpoenas.  And first, we just    11:56

21   need to figure out the residential addresses of these

22   individuals.  We don't have that because we, otherwise, just

23   have their corporate affiliated address, and we requested

24   assistance from opposing counsel in locating these people, but

25   we have not yet --                                           11:56

1      THE COURT:  And these are current employees of

2  California Stem Cell Treatment?

3      MS. SANDERS:  We understand that most of them are.

4  We're not personally aware of who is not.

5      THE COURT:  Very well.  So Ms. Brecht, will you                    11:56

6  accept service of the witnesses that are current employees of

7  your client?

8      MS. BRECHT:  Yes, Your Honor, for current employees.

9  The issue is, as I represented to the Government, not all of

10  the people who they've requested are current employees.        11:56

11      THE COURT:  Very well.  So that is the ruling.  If

12  they are current employees of the defendant then the defendant

13  will accept service for those employees.  If they are not

14  current employees then you will have to find out how you're

15  going to serve them.                                                            11:57

16      MS. SANDERS:  Thank you, Your Honor.

17      THE COURT:  Anything else?

18      MS. BRECHT:  No, Your Honor.

19      THE COURT:  Very well.  Then we'll see you back here

20  on the 28th.  Mr. Galvez will give you contact information for   11:57

21  you to contact -- you and your staff to contact to try to get

22  the issues resolved regarding the remote testimony and the

23  video access.  And we'll see you back here on the 28th.

24      Thank you.

25      MS. BRECHT:  Thank you, Your Honor.                             11:57

1        MR. GURVITZ:  Thank you, Your Honor.

2                (Proceedings concluded.)

3                        -o0o-

```
 1                  CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4           I, PHYLLIS A. PRESTON, FEDERAL OFFICIAL REALTIME

 5   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

 6   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

 7   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

 8   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

 9   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

10   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

11   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

12   THE UNITED STATES.

13

14

15                  DATED THIS 23RD DAY OF JULY, 2020

16

17

18           /s/ PHYLLIS A. PRESTON

19           _____

20           PHYLLIS A. PRESTON, CSR No. 8701, FCRR

21            FEDERAL OFFICIAL COURT REPORTER

22

23

24

25
```