BRETT A. SHUMATE
Assistant Attorney General
SARMAD KHOJASTEH
Deputy Assistant Attorney General
LISA K. HSIAO
Acting Director
ROGER J. GURAL
Assistant Director
Enforcement & Affirmative Litigation Branch
    U.S. Department of Justice
    450 5th Street, NW, Suite 6400-South
    Washington, D.C. 20530
    Telephone: (202) 307-0174
    Facsimile:  (202) 514-8742
    E-mail: Roger.Gural@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA STEM CELL TREATMENT CENTER, INC., *et al.*<br><br>Defendants. | No. 5:18-CV-01005-JGB-KKx<br><br>**PLAINTIFF UNITED STATES OF AMERICA'S OPENING MEMORANDUM ON REMAND**<br><br>Honorable Jesus G. Bernal<br>United States District Judge<br><br>Hearing Date:  August 31, 2026<br>Hearing Time:  9:00 a.m.<br>Courtroom:  Riverside Courthouse<br>Courtroom 1. 2nd Floor |

TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     PROCEDURAL HISTORY .....................................................................1

III.    ARGUMENT ..........................................................................................3

        A.    Defendants' Products Are Drugs Under the FDCA and Are Held for Sale After They or Their Components Moved in Interstate Commerce.......4

        B.    The Government is Entitled to Judgment on Claim Number One for Violations of 21 U.S.C. § 331(k) (Adulteration) ...........................................5

        C.    The Government is Entitled to Judgment on Claim Number Two for Violations of 21 U.S.C. § 331(k) (Misbranding) ...........................................5

        D.    The Government is Entitled to Judgment on Claim Number Three for Violations of 21 U.S.C. § 331(c)...................................................................7

        E.    Defendants Failed to Prove any Affirmative Defense ..................................7

        F.    The Government's Proposed Order of Injunctive Relief Is Justified and Measured .................................................................................................8

IV.     CONCLUSION.....................................................................................11

**Table of Authorities**

**Federal Cases**

*Baker v. United States*,
   932 F.2d 813 (9th Cir. 1991) ...................................................................................5

*Fagan v. AmerisourceBergen Corp.*,
   356 F. Supp. 2d 198 (E.D.N.Y. 2004) ....................................................................7

*Martinez-Gonzalez v. Elkhorn Packing Co.*,
   635 F.Supp.3d 883 (N.D. Cal. 2022) .....................................................................7

*S.E.C. v. Koracorp Indus., Inc.*,
   575 F.2d 692 (9th Cir. 1978) ...................................................................................8

*United States v. 62 Packages, More or Less, of Marmola Prescription Tablets*,
   142 F.2d 107 (7th Cir. 1944) ...................................................................................6

*United States v. Article of Drug, Bacto-Unidisk*,
   394 U.S. 784 (1969)...............................................................................................2, 8

*United States v. Articles of Drug*,
   825 F.2d 1238 (8th Cir. 1987) ................................................................................8

*United States v. California Stem Cell Treatment Ctr.*,
   117 F.4th 1213 (9th Cir. 2024) .........................................................1, 2, 4, 9, 11

*United States v. Evers*,
   643 F.2d 1043 (5th Cir. 1981) ..........................................................................4, 5

*United States v. Laerdal Mfg. Corp.*,
   73 F.3d 852 (9th Cir. 1995) ....................................................................................8

*United States v. Odessa Union Warehouse Coop*,
   833 F.2d 172 (9th Cir. 1987) ..................................................................................8

*United States v. Organic Pastures Dairy Co.*,
   708 F. Supp. 2d (E.D.. Cal. 2010) ........................................................................8

*United States v. Regenerative Scis., LLC*,
   741 F.3d 1314 (D.C. Cir. 2014)......................................................................4, 5, 9

*United States v. Rhody Dairy, LLC*,
   812 F. Supp. 2d 1239 (W.D. Wash. 2011)...........................................................5, 8

*United States v. Syntrax Innovations, Inc.*,
   149 F. Supp. 2d 880 (E.D. Mo. 2001) ..................................................................10

*United States v. U.S. Stem Cell Clinic, LLC*,
   998 F.3d 1302 (11th Cir. June 2, 2021).................................................................4

*United States v. U.S. Stem Cell Clinic, LLC*,
403 F. Supp. 3d 1279 (S.D. Fla. 2019) ..................................................................................4, 5

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) .........................................................................................................8

**Federal Statutes**

21 U.S.C. § 321(g)(1).........................................................................................................5

21 U.S.C. § 331(c) ....................................................................................................1, 3, 6, 7

21 U.S.C. § 331(k) ...................................................................................................1, 3 ,4, 5

21 U.S.C. § 332(a) .........................................................................................................1, 8

21 U.S.C. § 352(f)(1) .......................................................................................................5, 6

21 U.S.C. § 352(j) ..........................................................................................................5, 6

21 U.S.C. § 353(b)(4).......................................................................................................6, 7

21 U.S.C. § 1271.10(a) ......................................................................................................7

**Federal Regulations**

21 C.F.R. § 201.5 ...........................................................................................................5

## I.      INTRODUCTION

On September 27, 2024, the Ninth Circuit Court of Appeals ruled that Defendants' stromal vascular fraction ("SVF") product is both a drug under the Federal Food, Drug, and Cosmetic Act ("FDCA" or "the Act") and not exempt from FDA regulation under the same surgical procedure exception ("SSPE"). *See United States v. California Stem Cell Treatment Ctr.*, 117 F.4th 1213, 1218-1227 (9th Cir. 2024). With the fundamental issues resolved, the case is now ready for a final decision. On remand, this Court should: (1) view the trial record through the lens of the Ninth Circuit's ruling; (2) adopt the Government's proposed findings of fact and conclusions of law, ECF No. 169-1, attached as Ex. A (which are entirely consistent with the Ninth Circuit's opinion); and (3) enter the Government's proposed order of permanent injunction ("Proposed Order"), attached as Ex. B, which is designed to protect the public health by bringing Defendants under regulatory oversight and into compliance with the FDCA.

The trial record shows the Government met its burden to prove Defendants violate the FDCA and that Defendants failed to prove any affirmative defenses. Thus, the Government is entitled to judgment and entry of the attached Proposed Order without the need for any further fact-finding proceedings.

## II.     PROCEDURAL HISTORY

On May 9, 2018, the Government filed its Complaint seeking to permanently enjoin California Stem Cell Treatment Center, Inc., Cell Surgical Network Corporation, and individuals Elliot B. Lander, M.D., and Mark Berman, M.D.,[1] from violating the FDCA. *See* ECF No. 1; 21 U.S.C. § 332(a). The Complaint explained that Defendants manufacture autologous SVF products and administer them to patients to treat a wide array of diseases and conditions without any FDA approvals. The Government also alleged that Defendants violate the FDCA by causing the adulteration and misbranding of drugs while they are held for sale after shipment of one or more of their components in interstate commerce, in

---

[1] Counsel for Defendants notified this Court on August 29, 2025, that Defendant Mark C. Berman was deceased. ECF No. 229.

1

violation of 21 U.S.C. § 331(k), and by receiving misbranded drugs in interstate commerce and delivering them for pay, in violation of 21 U.S.C. § 331(c). On July 8, 2019, the Government moved for summary judgment on all issues in the Complaint. ECF No. 45. On January 27, 2020, the Court denied the Government's summary judgment motion and set the matter for trial. ECF No. 84.

Over the course of the litigation, Defendants did not dispute the evidence underlying these violations. They admitted they intend their SVF products to be used to address patients' symptoms of neurological, autoimmune, orthopedic, and degenerative diseases and conditions. They admitted the SVF products do not comply with current good manufacturing practice ("CGMP"). They admitted the relevant facts regarding SVF product labeling which makes them misbranded. They insisted, however, that the Government's case was deficient because their SVF products are not drugs and, even if they were, they were exempt from FDA oversight pursuant to the SSPE.

The Court held a bench trial in this matter from May 4 through 13, 2021. On August 30, 2022, the Court entered judgment in favor of Defendants, holding, in part, that neither Defendants' SVF product nor its Expanded SVF product are drugs within the meaning of the FDCA, thereby making the Act's adulteration and misbranding provisions inapplicable to these products. Findings of Fact and Conclusions of Law. ECF No. 190 at 11. This Court also held that Defendants' SVF product qualifies for the SSPE, thereby exempting it from FDA oversight. *See id.* at 12. The Government timely appealed the judgment.

On September 27, 2024, the Ninth Circuit Court of Appeals reversed these conclusions and remanded this action to this Court. *See California Stem Cell Treatment Ctr.*, 117 F.4th at 1221-1227. The Ninth Circuit held that, "[c]onsistent with the Supreme Court's instruction that the FDCA's definition of 'drug' is 'as broad as its literal language indicates,' . . . Defendants' SVF is a 'drug.'" *Id.* at 1221 (quoting *United States v. Article of Drug, Bacto-Unidisk*, 394 U.S. 784, 798 (1969)). The Ninth Circuit's opinion also interpreted the FDCA's SSPE to compare the "human cells, tissues, and cellular and tissue-based products" ("HCT/Ps") as a whole, before any significant processing, with the

implanted HCT/Ps. *Id.* at 1227. The Ninth Circuit concluded, "[b]ecause the SVF procedure removes fat tissue but implants SVF, the procedure is not exempt from regulation under the SSP exception." *Id.*

## III.    ARGUMENT

Although the application of the SSPE to Defendants' SVF products and the products' subsequent regulatory status under the FDCA were the primary issues to be decided at trial, the Government nevertheless introduced ample evidence in support of each claim alleged in the Complaint.[2] Now that the Ninth Circuit has held that the SVF products are drugs and not exempted from FDA regulation under the SSPE, the evidence introduced at trial compels the outcome that the Government is entitled to judgment on those counts.

The Government presented evidence supporting its claim that Defendants violate 21 U.S.C. § 331(k) by causing the adulteration of their drug products by failing to comply with CGMP while they are held for sale after shipment of one or more of their components in interstate commerce ("Claim Number One"). The Government also introduced evidence showing Defendants violate 21 U.S.C. § 331(k) by causing the misbranding of their drug products by failing to include adequate directions for use and required markings while they are held for sale after shipment of one or more of their components in interstate commerce. And with respect to Defendants' SVF/Vaccinia product, the Government presented evidence that the product was misbranded because it was dangerous to health when used in the manner suggested in its labeling ("Claim Number Two"). Finally, the Government introduced evidence that Defendants violate 21 U.S.C. § 331(c) by receiving drugs (or a component thereof) that are similarly misbranded in interstate commerce and delivering them or proffering them for delivery for pay or otherwise ("Claim Number Three").

---

[2] In addressing a motion to define the scope of the trial, the Court noted it had "made no ultimate findings of fact" when ruling on Plaintiff's motion for summary judgment. *See* Order of April 14, 2020, at 1. ECF No. 102. The Court also noted "the Government must produce evidence to establish any elements where it carries the burden" in order "to prevail at trial." *See id.*

As shown below, reading the trial record in harmony with the Ninth Circuit's holdings leads to the inescapable conclusion that the Government is entitled to judgment on all its claims and Defendants must be enjoined from continuing to violate the FDCA.

A.   **Defendants' Products Are Drugs Under the FDCA and Are Held for Sale After They or Their Components Moved in Interstate Commerce**

As the Ninth Circuit recognized, Defendants' products that contain SVF are drugs and are properly regulated under the FDCA. *See California Stem Cell Treatment Ctr., Inc.*, 117 F.4th at 1218, 1221 ("Based on the plain text of the statute, we agree with the FDA that Defendants' SVF is a drug.").

A drug is "held for sale" if it is used for any purpose other than personal consumption. *United States v. Regenerative Scis., LLC*, 741 F.3d 1314, 1320 (D.C. Cir. 2014); *United States v. Evers*, 643 F.2d 1043, 1050 (5th Cir. 1981) ("Doctors holding drugs for use in their practice are clearly one part of the distribution process, and doctors may therefore hold drugs for sale within the meaning of [21 U.S.C. § 331(k)]."); *United States v. U.S. Stem Cell Clinic, LLC*, 403 F. Supp. 3d 1279, 1298 n.11 (S.D. Fla. 2019), *aff'd*, 998 F.3d 1302 (11th Cir. June 2, 2021); *see generally* Ex. A at 55-60. Patients pay thousands of dollars to receive a single SVF product, and some patients pay much more to receive multiple treatments—a practice that Defendants have referred to as "patient-funded research." *See, e.g.*, Ex. A at 8, ¶¶ 24-25, 27.

Evidence adduced at trial shows that the drug components 0.9% Sodium Chloride Injection, USP and 5% Dextrose in Lactated Ringer's Injection, both of which originate outside the state of California, traveled in interstate commerce. Ex. A at 13, ¶ 43. Defendants' manufacturing process also involves their use of a collagenase product made in Indiana. *Id.* The Vaccinia Vaccine, Live (also known as ACAM2000) used to manufacture the SVF/Vaccinia product was shipped in interstate commerce from Georgia. *Id.* at 42, ¶ 173. Components of Defendants' Expanded SVF product came from a firm in New Jersey. *Id.* at 48, ¶ 205.

4

**B.      The Government is Entitled to Judgment on Claim Number One for Violations of 21 U.S.C. § 331(k) (Adulteration)**

At trial, the Government proved Defendants violate 21 U.S.C. § 331(k) via their SVF products by showing: (1) the SVF products are drugs; (2) the SVF products were held for sale after they or one or more of its components had moved in interstate commerce; and (3) Defendants cause their SVF products to be adulterated by failing to comply with CGMP. *See* 21 U.S.C. § 321(g)(1); *United States v. Rhody Dairy, LLC*, 812 F. Supp. 2d 1239, 1243 (W.D. Wash. 2011) (citation omitted).

Four FDA investigators with a collective eight decades of experience in conducting inspections and evaluating facility design, operation, manufacturing, and testing procedures testified about Defendants' multiple violations of CGMP, including but not limited to their failure to aseptically process their drugs to prevent microbiological contamination or test the products for sterility and for the presence of endotoxins which can cause fevers and other health complications, as well as their failure to adequately investigate adverse events. Defendants did not dispute the accuracy of the FDA investigators' observations but argued that they should not have to comply with CGMP. *See* Ex. A at 32-38, ¶¶ 123-150.

**C.      The Government is Entitled to Judgment on Claim Number Two for Violations of 21 U.S.C. § 331(k) (Misbranding)**

Defendants' SVF products are misbranded because: (1) they are drugs; (2) they are held for sale after a component of the product moved in interstate commerce; and (3) Defendants performed acts which resulted in the products being misbranded. *See* 21 U.S.C. §§ 331(k), 352(f)(1), 353(b)(4), 352(j); *see also Baker v. United States*, 932 F.2d 813, 814 (9th Cir. 1991); *Regenerative Scis., LLC*, 741 F.3d at 1323-24; *Evers*, 643 F.2d at 1047; *U.S. Stem Cell Clinic, LLC*, 403 F. Supp. 3d at 1299-1300.

First, the SVF products are misbranded within the meaning of 21 U.S.C. § 352(f)(1), because they are drugs and their labeling fails to bear adequate directions for use and because they are not exempt from the requirements of 21 U.S.C. § 352(f)(1). As

5

the Government's expert explained at trial, the SVF drug products do not bear adequate directions for use for three different reasons, any one of which is sufficient to establish misbranding: (1) the SVF drug products do not bear labeling that contains information required for adequate directions for use, as defined in 21 C.F.R. § 201.5; (2) the SVF drug products are unapproved prescription drugs that are not excepted from labeling regulations requiring directions under which a lay person can use the drug safely; and (3) it is currently impossible to draft adequate directions for use because there is no scientifically valid evidence to show that the SVF products are safe or effective for any indication (*i.e.*, intended use). *See* Ex. A at 38-39, ¶¶ 151-159.

Second, the SVF products are further misbranded within the meaning of 21 U.S.C. § 353(b)(4) because they are prescription drugs and, at times prior to dispensing, their labels fail to bear, at a minimum, the "Rx only" symbol. *See* Ex. A at 38, ¶ 151.

Finally, the SVF/Vaccinia product—which Defendants have used to purportedly treat cancer patients—is additionally misbranded because it is "dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof." *See* 21 U.S.C. § 352(j); *see also United States v. 62 Packages, More or Less, of Marmola Prescription Tablets*, 142 F.2d 107, 110 (7th Cir. 1944) (Section 352(j) does not require that the drug be dangerous to the health of all the patients who take it as prescribed or recommended, but only that it be "dangerous to the public health at large if used as recommended by its vendors"). Here, Defendants' unauthorized experiment treating cancer patients with an unproven product containing live vaccinia virus not only put the patients at risk but also represented a risk to the public health because people in close contact with those patients could have been infected with live virus.[3] *See* Ex. A at 39-41, ¶¶ 160-174.

_____

[3] The Government recognizes that the Court declined to enjoin the Defendants from producing the SVF/Vaccina product because, *inter alia*, they could not obtain the ACAM2000 needed for production. *See* Findings of Fact and Conclusions of Law, ECF No. 190 at 17-18, ¶ 35. However, in an abundance of caution—and to protect the public from future unapproved experimental products involving SVF and vaccines—the Government restates its concern about products that are misbranded because they are dangerous to health when used in the manner suggested by Defendants.

**D.    The Government is Entitled to Judgment on Claim Number Three for Violations of 21 U.S.C. § 331(c)**

The Government proved Defendants violate 21 U.S.C. § 331(c) by: (1) receiving drugs (or components thereof) that; (2) are misbranded within the meaning of 21 U.S.C. §§ 352(f)(1) and 353(b)(4); (3) in interstate commerce; and (4) delivering or proffering for delivery such drugs for pay or otherwise. *See* 21 U.S.C. § 331(c); *see also Fagan v. AmerisourceBergen Corp.*, 356 F. Supp. 2d 198, 214 (E.D.N.Y. 2004).

Defendants' Expanded SVF product is a drug made from a component—namely, expanded cells—that Defendants receive from a third-party outside of California. Ex. A at 5, 48-49 ¶¶ 6, 205, 208. The Expanded SVF product is misbranded because it lacks adequate directions for use and lacks the "Rx only" symbol. Ex. at 60, ¶ 41. And the Defendants deliver the misbranded Expanded SVF product to patients who pay them for their services. *See* Ex. A at 9, 38-39, ¶¶ 27, 151-159, 205.

**E.    Defendants Failed to Prove any Affirmative Defense**

Defendants pleaded several barebones affirmative defenses, including one under the SSPE. *See* Defs.' Ans. at 11-12, ECF No. 27. Although this Court held after trial that Defendants qualified for the SSPE, the Ninth Circuit held on appeal that Defendants' procedure is not exempt from regulation under the SSPE. Defendants did not put on any evidence of any other affirmative defense at trial, much less carry its burden to prove any such defense.

Moreover, to the extent Defendants may argue on remand that their violations are protected under 21 U.S.C. § 1271.10(a), the Court should reject their pursuit of a new affirmative defense that was explicitly rejected by the Defendants during the litigation. *See* Defs.' Summ. J. Opp'n, ECF No. 59 at 34-35 (contending that the Government's analysis of the minimal manipulation criteria of section 1271.10(a) was "irrelevant to this dispute."). *See also Martinez-Gonzalez v. Elkhorn Packing Co.*, 635 F. Supp. 3d 883, 892 (N.D. Cal. 2022) (refusing to consider forfeited defense on remand).

7

**F.      The Government's Proposed Order of Injunctive Relief Is Justified and Measured**

Unless and until this Court enters injunctive relief against Defendants, they will continue to manufacture, receive, and hold for sale unapproved, adulterated, and misbranded SVF drug products that are squarely subject to regulation by FDA. Under 21 U.S.C. § 332(a), district courts have jurisdiction to enjoin violations of the FDCA. *Organic Pastures Dairy Co.*, 708 F. Supp. 2d at 1011. The FDCA's injunctive power should be exercised in light of its purpose to protect the public health, *see United States v. An Article of Drug . . . Bacto-Unidisk*, 394 U.S. 784, 798 (1969), and is appropriate when the United States establishes that the defendant has violated the applicable statute and that there exists "some cognizable danger of recurrent violation." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Rhody Dairy LLC*, 812 F. Supp. 2d at 1245-46. The probability of future violations may be inferred from past unlawful conduct. *See United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 857 (9th Cir. 1995) (*citing S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978)); *United States v. Odessa Union Warehouse Coop*, 833 F.2d 172, 176 (9th Cir. 1987); *Organic Pastures*, 708 F. Supp. 2d at 1012.

Once the United States establishes the existence of the statutory violation, the burden shifts to the defendants to show that "there is no reasonable expectation that the wrong will be repeated." *W.T. Grant Co.*, 345 U.S. at 633 (citation and quotation marks omitted). Accordingly, "[a] district court may issue an injunction if it concludes that the injunction is necessary to prevent future violations." *United States v. Articles of Drug*, 825 F.2d 1238, 1248 (8th Cir. 1987) (internal citations omitted).

The Proposed Order, attached as Ex. B, contains provisions that are essential to enable FDA to ensure Defendants' compliance with the FDCA, the Public Health Service Act ("PHSA"), and applicable regulations. Similar provisions are invariably included in FDA consent decrees and proposed orders and are routinely accepted and imposed by federal courts across the country, including the Central District of California, as part of

8

the proper resolution to cases brought under the FDCA.[4]

Moreover, the Proposed Order contains provisions that are similar to those found in the orders of permanent injunction issued in FDA enforcement cases that concerned stem cell products similar to those at issue here. *See* Order of Perm. Inj., *U.S. Stem Cell Clinic, LLC*, No. 18-cv-61047 (S.D. Fla. June 25, 2019), ECF No. 83; Order of Perm. Inj., *Regenerative Scis., LLC*, No. 10-cv-1327 (D.D.C. July 23, 2012), ECF No. 48.[5]

Although the Proposed Order contains many standard provisions, the United States has shown restraint by modifying a key requirement impacting the Defendants' ability to manufacture their SVF products. Specifically, courts in FDA enforcement cases have typically required defendants acting in violation of the FDCA to immediately cease manufacturing and distributing products until, among other things, an outside expert and FDA agree that the defendants are in compliance with the law. *See, e.g.*, Order of Perm. Inj., ¶ 7, *U.S. Stem Cell Clinic, LLC*, (18-cv-61047), ECF No. 83; Order of Perm. Inj., ¶ 6, *Regenerative Scis., LLC* (No. 10-cv-1327), ECF No. 48; Order of Perm. Inj., ¶ 5, *Innovative BioDefense, Inc.* (No. 18-cv-996), ECF No. 215; Order for Perm. Inj., ¶ 8, *United States v. Bioanue Labs., Inc.*, No. 13-cv-188 (M.D. Ga. July 23, 2014), ECF No. 27. Here, given the unique facts of this case—and the Government's desire to balance access to novel therapies with the protection of the public health—the government is not requiring an immediate shutdown and has narrowly tailored Paragraphs 6-8 of its Proposed Order to provide appropriate flexibility for the Defendants to continue manufacturing their SVF products while they seek required approvals.

---

[4] *See, e.g.*, Order of Perm. Inj., *United States v. Genesis II Church of Health & Healing*, No. 20-cv-21601 (S.D. Fla. Aug. 3, 2020), ECF No. 77; Order of Perm. Inj., *United States v. Innovative BioDefense, Inc.*, No. 18-cv-996 (C.D. Cal. May 4, 2020), ECF No. 215; Consent Decree of Perm. Inj., *United States v. GM Mfg., Inc.*, No. 14-cv-4231 (C.D. Cal. June 20, 2014), ECF No. 10; Consent Decree of Perm. Inj., *United States v. Scilabs Nutraceuticals, Inc.*, No. 14-cv-1759 (C.D. Cal. Nov. 12, 2014), ECF No. 7.

[5] The Ninth Circuit's remand Order highlighted the similarity between the present case and the *U.S. Stem Cell Clinic* and *Regenerative Sciences* cases. *See California Stem Cell Treatment Ctr., Inc.*, 117 F.4th at 1219, 1226, n.13.

9

Notwithstanding the flexibility provided by Paragraphs 6-8 of the Proposed Order, other provisions are more standardized and necessary to ensure that the Defendants maintain compliance with the law. For instance, Paragraph 12 of the Proposed Order provides FDA with the authority to inspect Defendants' facilities to ensure that they are adhering to the terms of the Court's order. Paragraph 13 of the Proposed Order requires Defendants to pay costs associated with such inspections.

If FDA discovers that Defendants have resumed their unlawful activities, Paragraphs 10 and 11 of the Proposed Order permit FDA to issue a letter requiring Defendants to immediately cease their operations, initiate recalls, or take other corrective actions. This standard provision gives FDA the means to take swift and appropriate action to safeguard the public health by preventing violative products from reaching consumers. Such "relief is routinely ordered by other courts to ensure compliance with the terms of the injunction." *United States v. Syntrax Innovations, Inc.*, 149 F. Supp. 2d 880, 884-89 (E.D. Mo. 2001) (holding that "[t]he inspection authority needed by the FDA to ensure that defendants are complying with the terms of [the] order should be more extensive than the statutory authority granted the FDA to determine whether the FDCA is, in fact, being violated," and finding "it necessary to permit the government to shut down the defendants' operations upon a finding of a violation of this Order without further action by this Court").

Paragraphs 16 and 17 of the Proposed Order also require Defendants to provide a copy of this Court's order to any persons or entities who are actively involved in Defendants' operations, including officers and employees, as well as any persons or entities who become associated with Defendants after the entry of the order. This provision is necessary to prevent inadvertent violations by parties associated with Defendants who are unaware of the terms of the Court's order.

Finally, to the extent Defendants may be uncomfortable with the terms of the Proposed Order, or are concerned that it gives FDA too much authority, Paragraph 19 of the Proposed Order ensures that they can seek judicial relief from the Court with respect to FDA's decisions under the order.

The specific provisions of the Proposed Order discussed above are standard and necessary. Same or similar relief has been routinely awarded in FDA enforcement actions against other producers of violative products, including manufacturers of unapproved stem cell products. Other than the modifications to Paragraphs 6-8 of the Proposed Order discussed earlier (which benefit the Defendants), the United States sees no reason to depart from the formula for injunctive relief that FDA has employed successfully for many years to ensure the safety of the nation's food and drug supply.

## IV.   CONCLUSION

Defendants violate well-established law, and they endanger the public by manufacturing and distributing adulterated and misbranded drugs. This case has been fully litigated with a robust factual record that entitles the Government to judgment as a matter of law. Considering the foregoing and consistent with the remanded decision by the Ninth Circuit in *United States v. California Stem Cell Treatment Center, Inc.*, the Government requests that this Court enter judgment in its favor and enter the attached Proposed Order permanently enjoining Defendants from continuing to violate the law.

DATED: July 10, 2026               Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SARMAD M. KHOJASTEH
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director
Enforcement & Affirmative
Litigation Branch

11

/s/ Roger J. Gural
ROGER J. GURAL
Assistant Director
Georgia Bar No. 300800
U.S. Department of Justice
450 Fifth Street, N.W.
Washington, DC 20044
Tel: 202-307-0174
Roger.Gural@usdoj.gov

*Counsel for United States of America*

OF COUNSEL:

ROBERT FOX FOSTER
Acting General Counsel
U.S. Department of
Health and Human Services

SEAN R. KEVENEY
Chief Counsel
Food and Drug Administration

SHANNON M. SINGLETON
Deputy Chief Counsel, Litigation

MICHAEL SHANE
Senior Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2026, I electronically filed a true and correct copy of the foregoing PLAINTIFF UNITED STATES OF AMERICA'S OPENING MEMORANDUM ON REMAND, through the Court's CM/ECF system, which will send a notice of electronic filing to the following counsel of record listed below:

Celeste M. Brecht (SBN 238604)
cbrecht@jonesday.com
Ramanda R. Luper (SBN 313606)
rluper@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071.2452
Telephone: +1.213.489.3939
Facsimile: +1.213.243.2539

/s/ Roger J. Gural
ROGER J. GURAL

13