Celeste M. Brecht (SBN 238604)
  cbrecht@jonesday.com
Ramanda R. Luper (SBN 313606)
  rluper@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2452
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539

Attorneys for Defendants
CALIFORNIA STEM CELL TREATMENT
CENTER, INC., CELL SURGICAL
NETWORK CORPORATION, ELLIOT B.
LANDER, M.D., and MARK BERMAN, M.D.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA STEM CELL TREATMENT CENTER, INC., a California corporation, CELL SURGICAL NETWORK CORPORATION, a California corporation, ELLIOT B. LANDER, M.D., and MARK BERMAN, M.D., individuals,<br><br>Defendants. | Case No. 5:18-CV-01005-JGB-KKx<br><br>Assigned for all purposes to Hon. Jesus G. Bernal Riverside, Courtroom 1<br><br>**DEFENDANTS' OPENING BRIEF**<br><br>Action Filed:   May 9, 2018<br>Hearing Date:  Aug. 31, 2026<br>Time:         9:00 a.m. |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................................1

II.  BACKGROUND .....................................................................................................3

    A.   Factual Background ......................................................................................3

    B.   Procedural Background..................................................................................4

III. STANDARD.............................................................................................................5

IV.  ARGUMENT ...........................................................................................................6

    A.   FDA Regulations Require Enforcement Solely Under The PHS Act And Preclude Enforcement Under The FDCA. .....................................................6

        1.  FDA Regulations require enforcement solely under the PHS Act where the requirements of section 1271.10 are met, as they are here. ..................7

        2.  To hold that regulation of the SVF Cells procedure must be solely under Section 361 would be consistent with the regulation of similar procedures.....................................................................................................10

    B.   The Government Failed To Meet Two Statutory Requirements For Any Enforcement Suit Under The FDCA..............................................................13

        1.  Jurisdictional requirements for regulation .............................................13

        2.  Defendants are exempt from FDA registration requirements...............18

    C.   On The Record And Assuming The Government Can Overcome The Regulatory And Statutory Failings, It Has Not Shown A Violation. ................18

        1.  The government failed to prove adulteration.........................................19

        2.  The government failed to prove misbranding ........................................20

V.   CONCLUSION.......................................................................................................22

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baker v. United States*,
932 F.2d 813 (9th Cir. 1991) .................................................................................. 16

*Bayala v. U. S. Dep't of Homeland Sec.*,
246 F. Supp. 3d 16 (D.D.C. 2017) ............................................................................ 6

*Daniels v. Williams*,
474 U.S. 327 (1986) ................................................................................................. 11

*Dent v. West Virginia*,
129 U.S. 114 (1889) ................................................................................................. 17

*Gibbons v. Ogden*,
22 U.S. 1 (1824) ....................................................................................................... 17

*Gonzales v. Raich*,
545 U.S. 1 (2005) ..................................................................................................... 15

*Griswold v. Connecticut*,
381 U.S. 479 (1965) ................................................................................................. 15

*Hawker v. New York*,
170 U.S. 189 (1898) ................................................................................................. 18

*Judge Rotenberg Educ. Ctr., Inc. v. FDA*,
3 F.4th 390 (D.C. Cir. 2021) .................................................................................... 18

*Metlakatla Indian Cmty. v. Dunleavy*,
736 F. Supp. 3d 741 (D. Alaska 2024) ...................................................................... 5

*Stacy v. Colvin*,
825 F.3d 563 (9th Cir. 2016) ..................................................................................... 5

*Stanley v. Baca*,
137 F. Supp. 3d 1192 (C.D. Cal. 2015) ..................................................................... 6

*U.S. v. Cal. Stem Cell Treatment Ctr.*,
　117 F.4th 1213 (9th Cir. 2024) .................................................................passim

*U.S. v. Cardiff*,
　344 U.S. 174 (1952) ...................................................................................... 11

*U.S. v. Cole*,
　84 F. Supp. 3d 1159 (D. Or. 2015)............................................................... 21

*U.S. v. Kellington*,
　217 F.3d 1084 (9th Cir. 2000) .................................................................. 5, 6

*U.S. v. Morrison*,
　529 U.S. 598 (2000) ...................................................................................... 14

*U.S. v. US Stem Cell Clinic, LLC*,
　998 F.3d 1302 (11th Cir. 2021) ..................................................................... 7

*U.S. v. Regenerative Scis., LLC*,
　741 F.3d 1314 (D.C. Cir. 2014) ................................................................... 16

**STATUTES**

21 U.S.C. § 321(b)............................................................................................ 13

21 U.S.C. § 321(g)(1) ...................................................................................... 15

21 U.S.C. § 331(c)........................................................................................ 4, 19

21 U.S.C. § 331(k)............................................................................. 4, 13, 17, 19

21 U.S.C. § 351(a)(2)(B) ................................................................................. 19

21 U.S.C. § 352(b)(2) ....................................................................................... 19

21 U.S.C. § 352(f)............................................................................................. 19

21 U.S.C. § 360............................................................................................ 17, 18

42 U.S.C. § 262................................................................................................. 13

Public Health Service Act § 361, 42 U.S.C. § 264 (1944)...............................passim

California Health & Safety Code § 1248.1(g)........................................................20

California Health & Safety Code § 1248.15(a)......................................................20

**OTHER AUTHORITIES**

21 C.F.R. § 1271.3.............................................................................. 7, 8, 10, 16

21 C.F.R. § 1271.10..........................................................................................passim

21 C.F.R. § 1271.15...................................................................................2, 5, 7

21 C.F.R. § 1271.150..........................................................................................19

FDA, Guidance for Industry: Regulation of Human Cells, Tissues, and
    Cellular and Tissue-Base Products, 2007 WL 9360529 (Aug. 2007) ...............11

FDA, Regulatory Considerations For Human Cells, Tissues, and
    Cellular and Tissue-based Products: Minimal Manipulation and
    Homologous Use Guidance For Industry and Food and Drug
    Administration Staff, 2017 WL 6549871 (Dec. 2017).......................................12

Mohammed K. Mahmoud, et al., *In Vitro Fertilization*, 23
    OBSTETRICS, GYNECOLOGY & REPROD. MED. 238, 242 (2013) .........................11

California Stem Cell Treatment Center, Inc., Cell Surgical Network Corporation, and Elliot B. Lander, M.D., (collectively, "Defendants"), by and through their attorneys, hereby submit this Opening Brief pursuant to the Court's Order Setting Briefing Schedule. Minute Order, Dkt. No. 244 (Apr. 7, 2026).

## I.    INTRODUCTION

The medical procedures at issue are matters between a patient, her physician, and the patient's own cells. Yet, despite their inherently local nature, the federal government claims authority to regulate them. For the reasons discussed, this Court should not allow this incredible overreach of federal authority. This case remains an issue of respecting the boundary between federal regulatory authority and an individual's constitutional right to exercise control over her own body along with her physician's right to utilize medical procedures to treat significant health concerns.

As a threshold matter, the Ninth Circuit reversed two of this Court's prior holdings of law, but it did not disturb this Court's factual findings nor other legal conclusions.  Most importantly, the Ninth Circuit did not disturb this Court's findings that (1) the "entire SVF surgical procedure" is a "single, outpatient procedure at a surgical clinic," (2) the "SVF Cells are not altered, chemically or biologically, at any point during the SVF Surgical Procedure," and (3) that Defendants "comply with all health and safety standards established by the California State Medical Board for outpatient procedures." Findings of Fact and Law, Dkt. No. 190 at 4–6 at ¶¶ 11, 17, 19. As to the Expanded MSC procedure, the Ninth Circuit did not overturn the Court's findings that the government *did not present any evidence* (1) that the Defendants "are adulterating any material," (2) "that Defendants label or mislabel any material regulated by the FDA," or (3) "regarding the labeling Defendants receive from any GMP facility." *Id.* at 8–9, ¶¶ 29, 32.

The FDA regulates HCT/Ps under a "tiered, risk-based approach." *U.S. v. Cal. Stem Cell Treatment Ctr.*, 117 F.4th 1213, 1218 (9th Cir. 2024). The highest tier of regulation is that commonly applied to manufacturers that are using biological

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

material to create a pharmaceutical drug. These manufacturers are not medical professionals and the biological materials are allogenic (meaning prescribed to another person); and must comply with the strict Good Manufacturing Practice regulations promulgated under the Food, Drug, and Cosmetic Act ("FDCA") (21 U.S.C. §§ 301 *et seq.*). The middle tier of regulation are for minimally manipulated biological materials that are regulated solely under the Public Health Service Act ("PHS Act") (42 U.S.C. § 264), which is aimed at preventing the spread of communicable diseases and requires that the medical facilities comply with Good Tissue Practice ("GTP") regulations. The lowest tier of regulation is "no regulation" by the federal government, such as the Same Surgical Procedure Exception, 21 C.F.R. § 1271.15. Defendants disagree that the medical procedures at issue here are subject to federal regulation at all, but to the extent this Court finds they are federally regulated, and not otherwise exempted under Section 360, they should only be subject to the middle tier of regulations—GTP regulations promulgated under the PHS Act—because SVF Cells and Expanded MSCs meet the criteria set forth in 21 C.F.R. § 1271.10.

Thus, the Court should enter Defendants' Proposed Order for three reasons. *First*, the SVF Surgical Procedure and the Expanded MSC Procedure should be regulated solely under Section 361 of the PHS Act, instead of the FDCA. The government has offered no explanation justifying regulation of the SVF and Expanded Procedures under the FDCA even though similar procedures are regulated solely under Section 361. *Second*, the government has not rebutted Defendants' showing that the cells used in the SVF Surgical Procedure, a patient's own SVF Cells, do not travel in interstate commerce and are not for sale, so they are not subject to federal regulation. *Third*, regardless of whether the cells are regulated under the PHS Act or FDCA, the evidence at trial established that Defendants have complied with applicable law.

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

## II.    BACKGROUND

### A.    FACTUAL BACKGROUND

Drs. Mark Berman and Elliot Lander formed California Stem Cell Treatment Center in 2010. Dkt. No. 190 at 2 ¶ 1. Through their clinic, Drs. Berman and Lander harnessed the natural healing capabilities of a person's own stem cells to mitigate disease and degeneration and treat patients, and these procedures were safe. Drs. Berman and Lander have historically achieved these results through three procedures, only two of which remain at issue in this case—the SVF Surgical Procedure and the Expanded MSC Procedure.

**SVF Surgical Procedure**. In this procedure, a licensed physician targets SVF Cells for extraction and then implants those same cells into the same patient during the same procedure. Dkt. No. 190 at 4 ¶ 7. This procedure involves collecting the patient's SVF Cells and relocating those SVF Cells back into the same patient. *Id.* at 5 ¶ 13. The Ninth Circuit's decision adopts this Court's summary of the process. First, Defendants administer local anesthesia to a patient and use liposuction to remove fat tissue. *Cal. Stem Cell Treatment Ctr.*, 117 F.4th at 1216. That tissue is then centrifuged to separate and remove blood and anesthesia. *Id.* Then, a collagenase enzyme blend is added to the tissue, and the enzymes break down the extracellular collagen matrix. *Id.* After the fat cells are discarded, the remaining cell isolate is repeatedly flushed with a crystalloid solution. *Id.* The final cell isolate is then pushed through a filter. *Id.* What remains are the SVF Cells, which are then administered to the patient. This entire process is done in one day. *Id.*

**Expanded MSC Surgical Procedure**. In this procedure, the adipose tissue is removed in the same liposuction procedure and then sent to a GTP-compliant tissue bank to isolate the MSCs. Dkt. No. 190 at 6 ¶ 20. While the tissue is at a GTP-compliant tissue bank, a third-party isolates the MSCs from the adipose tissue using a technique that is similar to the SVF Surgical Procedure. *Id.* at 7 ¶ 23. The cells are placed in a culture where they naturally self-replicate, then labeled and stored until

the patient requests they be returned so that the cells can be implanted back into the patient's body. *Id.* at 6-7 ¶ 20, 23.

**SVF/ACAM2000 Treatment**.[1] This was a limited experimental treatment for patients with terminal cancer. *Id.* at 9 ¶ 35. This procedure involved preparing the SVF Cells using the standard method described above, adding ACAM2000, an FDA-approved vaccine, to the SVF Cells, and then deploying this mixture into the patient's body. *Id.* ¶¶ 35, 37. Patients were not charged for this treatment. Defendants no longer perform this procedure, nor could they.  *Id.*

## B.     PROCEDURAL BACKGROUND

In 2018, the government brought this enforcement action seeking injunctive relief under the FDCA, 21 U.S.C. § 332(a). Compl., Dkt. No. 1 ¶ 1. The government alleged that Defendants violated 21 U.S.C. § 331(k) by causing drugs to become adulterated and misbranded while held for sale after the shipment in interstate commerce. *Id.* The government also alleged that Defendants violated 21 U.S.C. § 331(c) by receiving misbranded drugs in interstate commerce and delivering or proffering for delivery such drugs for pay or otherwise. *Id.* After a seven-day bench trial, this Court entered judgment in favor of Defendants. Dkt. No. 190 at 2. This Court based its decision on two determinations. First, this Court held that SVF was not a "drug" under the FDCA. *Id.* at 11 ¶ 3. "Accordingly, the SVF Procedure and Expanded MSC Procedure [were] not subject to the FDCA's adulteration and misbranding provisions." *Id.* at 11 ¶ 4. Second, and in the alternative, this Court held that Defendants' SVF Procedure, but not the Expanded MSC Procedure, fell within the Same Surgical Procedure Exception to FDCA regulation. *Id.* at 12 ¶ 6. Because the Court decided a threshold issue, the Court did not need to rule on any other element that the government was required to prove its claims, nor any alternative

---

[1] This Court found that the government lacked standing as to this procedure, and the government did not appeal this ruling.  Accordingly, the claims arising from this procedure are fully resolved and not addressed herein. Dkt. 190 at 17 ¶ 35.

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

arguments by Defendants. The government appealed as to these issues, only.

On September 27, 2024, the Ninth Circuit reversed. *Cal. Stem Cell Treatment Ctr.*, 117 F.4th 1213. The Ninth Circuit held that the SVF Cells administered to patients are a "drug" within the meaning of the FDCA because they do not qualify for the Same Surgical Procedure Exemption identified in 21 C.F.R. § 1271.15. *Id.* at 1221. The Ninth Circuit held that the Same Surgical Procedure Exception (21 C.F.R. § 1271.15(b)) did not apply "because the SVF procedure removes fat tissue but implants SVF." *Id.* at 1226. In reaching this second conclusion, the Ninth Circuit imputed the "minimal manipulation" element of 21 C.F.R. § 1271.10(a)(1) onto the Same Surgical Procedure Exception. *Id.* The Ninth Circuit reversed and remanded. *Id.* The Ninth Circuit, however, did not address the Expanded MSC Procedure. Defendants appealed the Ninth Circuit's decision on the SVF Cells to the United States Supreme Court, which denied the Defendants' writ of certiorari on October 14, 2025.

On March 16, 2026, this Court held a Status Conference, after which the Court ordered the parties to meet and confer to try to resolve this case. The parties were unable to reach a resolution. On April 6, 2026, the parties submitted a joint status report and proposed briefing schedule, which the Court adopted. Minute Order, Dkt. No. 244 (Apr. 7, 2026).

## III. STANDARD

On remand, "the district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016). "The district court may, however, 'decide anything not foreclosed by the mandate.'" *Id.* "To 'ascertain what was intended by [the] mandate,' a lower court may consult the higher court's opinion in addition to the mandate itself." *Metlakatla Indian Cmty. v. Dunleavy*, 736 F. Supp. 3d 741, 749 (D. Alaska 2024) (quoting *U.S. v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000)).

"[O]n remand, 'courts are often confronted with issues that were never considered by the remanding court.'" *Kellington*, 217 F.3d at 1093. "In such cases, '[b]roadly speaking, mandates require respect for what the higher court decided, *not for what it did not decide*.'" *Id.* (emphasis added). "The mere fact that [an issue] could have been decided is not sufficient to foreclose the issue on remand." *Bayala v. U. S. Dep't of Homeland Sec.*, 246 F. Supp. 3d 16, 22 (D.D.C. 2017). Where the appellate court did not resolve an issue on appeal, the district court is free to decide that issue on remand. *See, e.g.*, *Stanley v. Baca*, 137 F. Supp. 3d 1192, 1202 (C.D. Cal. 2015) (holding that application of federal habeas corpus statute on remand did not violate rule of mandate where the Court of Appeals' remand order did not resolve such issue).

## IV.   ARGUMENT

The government's claims continue to fail for three sets of reasons—regulatory, statutory, and factual.

### A.   FDA Regulations Require Enforcement Solely Under the PHS Act And Preclude Enforcement Under the FDCA.

The FDA regulates HCT/Ps under a "tiered, risk-based approach." *Cal. Stem Cell Treatment Ctr., Inc.*, 117 F.4th at 1218. The Ninth Circuit held that the cells at issue were not entitled to the "no oversight" tier under the Same Surgical Procedure Exception. *Id.* at 1226. But it did not address whether the cells are entitled to lesser regulation under the "middle of the hierarchy." *Id.* at 1218. To qualify for regulation under that middle tier, or Section 361, an HCT/P must meet four criteria: (1) minimal manipulation, (2) homologous use, (3) no combination with another article, and (4) systemic effect and autologous use. 21 C.F.R. § 1271.10.

The SVF Cells and Expanded MSCs meet these criteria, so to the extent they are federally regulated at all, it must be under Section 361 along with any other applicable exemption, like Section 360.

1. **FDA Regulations require enforcement solely under the PHS Act where the requirements of section 1271.10 are met, as they are here.**

(a)   **The HCT/P is Minimally Manipulated**

The SVF Cells and Expanded MSCs that are administered to patients are minimally manipulated. For cells or nonstructural tissues, the FDA defines minimal manipulation as "processing that does not alter the relevant biological characteristics of cells or tissues." *Id.* at § 1271.3(f)(2).

The Ninth Circuit determined that "minimal manipulation" must be met for the Same Surgical Procedure Exception to apply, and thus devoted a significant portion of its opinion to discussing whether the HCT/P at issue was minimally manipulated. The Ninth Circuit held that "the removed HCT/P is the fat tissue, not the cells targeted for implantation." *Cal. Stem Cell Treatment Ctr., Inc.*, 117 F.4th at 1226. Therefore, "[b]ecause the SVF procedure removes fat tissue but implants SVF, the procedure is not exempt from regulation under the SSP exception." *Id.*

However, the Ninth Circuit's discussion of minimal manipulation concerned whether the Same Surgical Procedure Exception applied and not whether regulation under Section 361 of the PHS Act was appropriate. Other circuits and the FDA itself have said that it would be a mistake to graft the requirements of the Section 361 HCT/P exception onto the Same Surgical Procedure Exception and that "[t]he assessment of whether the [Same Surgical Procedure Exception] applies is independent from the determination of whether the HCT/P meets the criteria [of the 361 HCT/P exception]." *U.S. v. US Stem Cell Clinic, LLC*, 998 F.3d 1302, 1311 n.2 (11th Cir. 2021). Therefore, the Ninth Circuit's holding, which concerned 21 C.F.R. § 1271.15(b), does not bind this Court's decision of whether 21 C.F.R. § 1271.10 applies, or its requirement for minimal manipulation is met. Furthermore, the tiers of regulation—"full, limited, or no oversight"—described by the Ninth Circuit demonstrate that it was considering a lesser degree of regulation under Section 361. *See Cal. Stem Cell Treatment Ctr., Inc.*, 117 4th 1218. Here, to the extent the SVF

Cells or Expanded MSCs are subject to federal regulation at all, the "middle" tier regulation, subject to any applicable exemptions, like Section 360, is the only appropriate fit. Defendants "need only comply with regulations aimed at preventing the spread of infectious disease promulgated under the PHSA." *See id.*

The relevant HCT/P under 21 C.F.R. § 1271.10 is the patient's cells.[2] As this Court has found: "the SVF Cells are not altered, chemically or biologically, at any point during the SVF Surgical Procedure," Dkt. No. 190 at 6 at ¶ 17, and "the SVF Surgical Procedure does not create any new material or introduce any foreign article into the body." Similarly, this Court found that "Expanded MSC retain all of the biological characteristics of the MSC Cells." *Id.* at 7 ¶ 23. This plainly meets the standard for minimal manipulation under the regulation. The Ninth Circuit did not disturb this Court's factual finding that the SVF Surgical Procedure and Expanded MSC procedure do not create any new material and that the cells "are not altered, chemically or biologically, at any point." Thus, this element is met.

### (b)    The HCT/P is Intended for Homologous Use Only

The SVF Cells and Expanded MSCs that are administered to a patient are intended for homologous use only. For regulation under Section 361, the regulations require the HCT/P be "intended for homologous use only, as reflected in the labeling, advertising, or other indications of the manufacturer's objective intent." 21 C.F.R. § 1271.10(a)(2). The FDA defines homologous use as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." 21 C.F.R. § 1271.3(c).

---

[2] Defendants expect that the government will request that the Court defer to the 2017 FDA Guidance titled "Regulatory Considerations for Human Cells, Tissues, and Cellular and Tissue-Based Products: Minimal Manipulation and Homologous Use," but 21 C.F.R. § 1271.10 is unambiguous and the FDA's 2017 Minimal Manipulation Guidance is not entitled to deference, for the same reasons this Court declined to defer to the 2017 SSP Exception Guidance. *See* Order Denying the Governments Motion for Summary Judgment, Dkt. No. 84 re at 12, n.14 (Jan. 27, 2020).

Here, the SVF Cells and Expanded MSCs are intended for homologous use and perform the same basic function in the recipient, who is also the donor. As this Court previously found, the "SVF Surgical Procedure increases the number of available SVF cells in circulation around an injured area," and that the "procedure does not alter the biological characteristics of the SVF cells, nor does it affect their ability to proliferate." Dkt. No. 190 at 5–6 ¶ 13, 17.  Similarly, the Expanded MSC procedure "thereby create[es] a sufficient number of cells," under GTP conditions "for multiple treatments," after completing the cells' natural state of replication or propagation.  *Id.* at 7 ¶ 23. The SVF Cells and Expanded MSCs that are removed from and reintroduced into the same body serve the same basic function. The Ninth Circuit's decision did not address this finding of fact, and there is no reason to abandon it now. Because the SVF Cells and Expanded MSCs retain their character and serve the same function, the homologous use requirement is met.

**(c)     The Manufacture Does Not Involve the Combination of the Cells with Another Article**

This Court expressly held that the SVF Cells are not combined with another article. Dkt No. 190 at 6 ¶¶ 17–18. This Court held: "[t]here is no evidence that the cells are anything other than autologous cells removed from, belonging to, and returned back to the patient." *Id.* at 14, ¶ 19. It further found that although the cells are "suspended in a sterile saline solution" before being relocated back into the patient's body, "[s]aline is a benign crystalloid, widely used in the practice of medicine." Dkt. No. 190 at 5–6 ¶ 15. Indeed, the regulations expressly permit the addition of a benign crystalloid like saline solution. 21 C.F.R. § 1271.10(a)(3) (permitting the addition of "water, crystalloids, or a sterilizing, preserving, or storage agent."). As this Court made clear, "[n]o new product is created by the use of saline as a delivery mechanism." Dkt. No. 190 at 5–6 ¶ 15. The Expanded MSCs are placed in a culture to naturally replicate but nothing is added to the cells. *Id.* at 7 ¶ 23. Again,

- 9 -

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

the Court has already decided this issue and the Ninth Circuit did not overturn this finding. This element is satisfied for both SVF Cells and Expanded MSCs.

### (d)    The HCT/P Has a Systemic Effect and Is For Autologous Use

Finally, the SVF Cells and Expanded MSCs have a systemic effect and are for autologous use. First, the government acknowledged the cells' systemic effect in its complaint. Dkt. No. 1 at 1 ¶ 7 ("CSCTC products are used for the experimental treatment of patients who suffer from a variety of diseases and conditions, including, but not limited to, cancer, arthritis, stroke, amyotrophic lateral sclerosis ("ALS"), multiple sclerosis ("MS"), macular degeneration, Parkinson's disease, chronic obstructive pulmonary disease ("COPD"), and diabetes."). The government accepts that both treatments can have a profound effect on the overall health of the patient, rather than an isolated benefit to a particular area of the body. It is undisputed that the cells are for autologous use. The FDA defines autologous use as "the implantation, transplantation, infusion, or transfer of human cells or tissue back into the individual from whom the cells or tissue were recovered." 21 C.F.R. § 1271.3(a). Here, the cells in both the SVF and Expanded MSC procedures are removed from and implanted into the same patient. Dkt No. 190 at 5–7 ¶¶ 13, 20. This Court's prior ruling that both procedures were for autologous use still stands and Defendants have met this element. *Id.* at 8 ¶ 24, 14 ¶ 17.

All four necessary elements for "minimal manipulation" have been satisfied and the Court should hold that the SVF Cells and Expanded MSCs are properly regulated under Section 361, subject to the Section 360 exemption, to the extent this Court finds that they are federally regulated at all.

### 2.    To hold that regulation of the SVF Cells procedure must be solely under Section 361 would be consistent with the regulation of similar procedures.

The FDA regulates similar products under Section 361 of the PHS Act. If this Court permits federal regulation of the SVF Cells and Expanded MSCs, the FDA

should be limited to regulating the SVF Cells and Expanded MSCs used in the procedures at issue here under the same statutory framework. Otherwise, the FDA would be allowed to continue its arbitrary and capricious application of the regulations, in violation of Defendants' due process rights. *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (explaining that due process "bar[s] certain [arbitrary] government actions regardless of the fairness of the procedures used to implement them."); *see U.S. v. Cardiff*, 344 U.S. 174 (1952) (finding that failure to ensure consistent treatment regarding purported prohibition of refusing entry to FDA inspectors is violation of due process).[3] The government's inconsistent application and belated modifications of regulations should not be permitted.

***Egg Retrieval***. The egg retrieval process is one such procedure. In this procedure, doctors collect follicular fluid containing mature oocytes (eggs) and surrounding granulosa (egg-supporting) cells. Mohammed K. Mahmoud, et al., *In Vitro Fertilization*, 23 OBSTETRICS, GYNECOLOGY & REPROD. MED. 238, 242 (2013). This mixture is aspirated from the ovarian follicles via a needle, collected in labeled test tubes, and immediately transferred to an embryologist for identification and isolation in a petri dish. *Id.* After eggs are retrieved, an embryologist will try to fertilize all mature eggs. Cleveland Clinic, IVF (In Vitro Fertilization), https://my.clevelandclinic.org/health/treatments/22457-ivf (last updated March 2, 2022). Eggs are fertilized with intracytoplasmic sperm injection (ICSI), and embryos are cultured for 5–6 days before the embryo is transferred. *Id.* This process is regulated under Section 361. *See* FDA, Guidance for Industry: Regulation of Human Cells, Tissues, and Cellular and Tissue-Base Products, 2007 WL 9360529 (Aug. 2007) (listing "reproductive cells and tissues (e.g., semen, oocytes, embryos)" as an example of an HCT/P that meets the criteria of 21 C.F.R. § 1271.10(a)).

---

[3] As Defendants have repeatedly noted, the FDA arbitrarily enforces its regulation, singling out Defendants while other facilities are able to continue. Defs. Proposed Findings of Fact and Law, Dkt. 168-1 ¶ 93.

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

***Autologous Islet Transplantation***. This procedure involves the infusion of a patient's own pancreatic islet cells into her liver. Columbia University, Autologous Islet Cell Transplantation After Total Pancreatectomy, https://columbiasurgery.org/pancreas/autologous-islet-cell-transplantation-after-total-pancreatectomy (last visited July 8, 2026). First, a patient's pancreas is surgically removed. *Id.* The Langerhans cells, which produce insulin, are isolated from the pancreas using a collagenase enzyme and made into a solution. *Id.* That solution is then infused into the patient's liver, where they begin to produce insulin. *Id.* This procedure is also considered homologous use under Section 361. *See* FDA, Regulatory Considerations For Human Cells, Tissues, and Cellular and Tissue-based Products: Minimal Manipulation and Homologous Use Guidance For Industry and Food and Drug Administration Staff, 2017 WL 6549871 (Dec. 2017). The FDA regulates autologous islet cells under Section 361 alone, yet insists that Defendants' materially identical procedure be regulated under the FDCA. The inconsistency is arbitrary and unexplained.

The government states that egg retrieval and islet transplantation procedures meet all the requirements for regulation under Section 361. Yet, it seeks to apply a different standard to a similar surgical procedure. *First*, egg retrieval and islet transplantation involve removing biologic material from the patient and administering derivative biologic material back into the patient, which is arguably more manipulation than what happens in the procedures here, but the FDA finds that these two procedures meet the minimal manipulation requirement. *Second*, the biological material that is removed is for a homologous use. The eggs continue to be for reproduction, even though it has changed into an embryo at the time of implantation, and the islet cells continue to produce insulin, even though they were taken from the pancreas and implanted into the liver. Similarly, while the SVF Cells and Expanded MSCs are isolated from fat tissue, they are not altered, continue to proliferate, and to circulate generally or around the injury, meaning that the

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

"procedure does not alter the biological characteristics of the SVF cells." Dkt. No. 190 at 5–6 ¶¶ 13, 17. *Third*, the islets and the eggs are not combined with any drug before being implanted back into the patient, and neither are the SVF Cells or Expanded MSCs. *Finally*, both the eggs and islet cells are dependent on the metabolic activity of living cells for their primary function and for reproductive use. Similarly, the SVF Cells and Expanded MSCs are intended for their same primary function when reimplanted in the body—healing of injuries.

The FDA has failed to provide any justification for seeking to regulate the Defendants' procedures under the more rigorous FDCA when it regulates similar procedures under the PHS Act alone.

**B.    The Government Failed To Meet Two Statutory Requirements For Any Enforcement Suit Under The FDCA.**

**1.    <u>Jurisdictional requirements for regulation</u>**

The cells used in the SVF Surgical Procedure or Expanded MSC Procedure are not for sale and the SVF cells have not travelled in interstate commerce. Therefore, the federal government lacks jurisdiction to regulate those cells.

**(a)    Interstate Commerce**

Both the FDCA and PHS Act require the regulated product to have travelled in interstate commerce. Section 331(k), the provision of the FDCA that the government alleges Defendants have violated, prohibits the "alteration" of a drug "if such act is done while [the drug] is held for sale (whether or not the first sale) after shipment in *interstate commerce*." (emphasis added). Similarly, 42 U.S.C. § 262, which the government also cites in its complaint, restricts the introduction of biological products "into *interstate commerce*." (emphasis added). The FDCA defines "interstate commerce" as "commerce between any State or Territory and any place outside thereof." 21 U.S.C. § 321(b). These jurisdictional requirements embrace the constitutional division of authority between Congress, which has the power to regulate interstate commerce, and the states, which retain the power to

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

regulate purely intrastate activities. *See U.S. v. Morrison*, 529 U.S. 598, 608 (2000) (quoting *U.S. v. Lopez*, 514 U.S. 549, 556–557 (1995)) ("[T]he scope of the interstate commerce power . . . 'may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them . . . would effectually obliterate the distinction between what is national and what is local.'"). The government acknowledges that it bears the burden of proving that the product "was held for sale after that drug, or a component thereof, moved in interstate commerce." (5/24/21 AM Tr. 13:22–24 (Sanders)).

The biological material at issue here—a patient's own cells—is not for purchase. At no time did the government introduce evidence that a person pays for their own cells, either in connection with the SVF Procedure or in connection with the Expanded MSC Procedure. Moreover, the SVF Cells utilized in the SVF Procedure do not travel in interstate commerce. This Court has already determined that. At trial, this Court held that "[t]he entire SVF Surgical Procedure, including the extraction, isolation, and reimplantation of SVF Cells occurs in California during a single, outpatient procedure at a surgical clinic." Dkt. No. 190 at 5 ¶ 14. This Court's prior factual findings, which remain intact after the Ninth Circuit's decision, make clear that the SVF Cells did not travel in interstate commerce, nor were they impacted by interstate commerce. The cells are removed from a patient in California and administered back to that same patient, on the same day, in the same state. Absent the jurisdictional requirement being met, the government cannot regulate the SVF Cells used in the SVF Surgical Procedure under the FDCA or the PHS Act.

Furthermore, the cells utilized in both the SVF Surgical Procedure and the Expanded Cell Procedure are not goods that are for sale or that can "travel" in commerce and regulating them as such implicates other constitutional protections. The SVF Cells and the Expanded MSC are not fungible goods; they are a patient's own cells, removed from the patient's body and returned to that same patient as part of a private medical decision. The government is seeking to regulate not only an

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

individual's private relationship with her physician, but also the individual's use of her body and her personal medical decisions. *See Griswold v. Connecticut*, 381 U.S. 479, 485 (1965). These activities are not a "'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). To hold that the FDA can regulate the SVF Surgical Procedure and the Expanded MSC Procedure as if a patient's own cells were a saleable commodity ignores the fundamental and constitutional differences between drugs and an individual's right to control her body and the cells that comprise it.

The government may advance two arguments to support the SVF Cells' connection to interstate commerce. Neither succeeds.

First, the government may contend that the Ninth Circuit has already held that the SVF Cells have travelled in interstate commerce. But the Ninth Circuit did not discuss the interstate commerce argument. The Ninth Circuit addressed only two questions on appeal—(1) whether the SVF Cells were a "drug" under the FDCA and (2) whether the Same Surgical Procedure Exception applied. The Ninth Circuit focused on the FDCA's "capacious" definition of "drug." *Cal. Stem Cell Treatment Ctr., Inc.*, 117 F.4th at 1219. But whether something is a drug under the FDCA and whether that drug travels in interstate commerce are two separate questions, as the definitions section of the FDCA makes clear. 21 U.S.C. § 321(b) defines interstate commerce, and 21 U.S.C. § 321(g)(1) defines "drug." The statute's definition of drug does not mention "interstate commerce," suggesting that something may be a drug under the Act without being sold or travelling in interstate commerce. Therefore, the Ninth Circuit's determination that the SVF Cells are a "drug" does not have any bearing on whether the SVF Cells travelled in interstate commerce or whether the SVF Cells or Expanded MSCs were sold. Thus, this Court is free to make an independent determination of whether the SVF Cells travelled in interstate commerce, or whether the SVF Cells or Expanded MSCs were sold. The SVF Cells

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

have not travelled in interstate commerce and neither the SVF Cells nor the Expanded MSCs were sold.

Second, the government may cite cases to support the SVF Cells' connection to interstate commerce. But those cases are distinguishable. Consider *United States v. Regenerative Sciences, LLC*, 741 F.3d 1314 (D.C. Cir. 2014). There, the D.C. Court of Appeals held that MSC taken from bone marrow, allowed to divide and proliferate, and *combined with an antibiotic* before being readministered to the patient could be regulated under the FDCA. *Id.* at 1326. The court held that the "[m]ixture undoubtedly ha[d] effects on interstate markets for orthopedic care." *Id.* And regardless, the mixture "actually include[d] an article shipped in interstate commerce, namely, doxycycline." *Id.* Similarly, in *Baker v. United States*, the Ninth Circuit held that the government could enforce the provisions of the FDCA against a criminal defendant who had manufactured synthetic heroin because "an ingredient used in the final product travelled in interstate commerce." 932 F.2d 813, 816 (9th Cir. 1991).

But the SVF Cells at issue here are distinct from the mixture at issue in *Regenerative Sciences* and the heroin at issue in *Baker*. The SVF Cells here are not combined with another drug, like doxycycline, that the FDCA clearly grants the federal government the authority to regulate. The SVF Cells are instead combined only with saline solution, a "benign crystalloid, widely used in the practice of medicine." Dkt. No. 190 at 5–6 ¶ 15. The FDA's regulations themselves appear to further confirm that the federal government's authority to regulate cells that are merely combined with saline solution is lessened. Specifically, 21 C.F.R. § 1271.10(a)(3) expressly allows for a lesser degree of regulation under the PHS Act when the only product added to the HCT/P is a crystalloid, such as saline solution. 21 C.F.R. § 1271.3(k), acknowledging the fact that saline solution is "benign" and "widely used in the practice of medicine." Dkt. No. 190 at 5–6 ¶ 15. To state otherwise would subject every surgical procedure to federal regulation, a clear

- 16 -

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

violation of the division of power between the federal and state governments. Regardless, Section 331(k) does not state that the FDCA applies if any component of a drug crosses state lines, only the final drug itself. *See* 21 U.S.C. § 331(k) ("done while [the drug] is held for sale (whether or not the first sale) after shipment in interstate commerce"). Notably, the government's own investigators appeared to concede at trial that the mere use during surgery of a product that traveled through interstate commerce is not sufficient to create FDA jurisdiction—any statement otherwise is an arbitrary and capricious application of law. (5/5/21 AM Tr. 11:25–12:8 (Lagud); 5/5/21 PM Tr. 24:11–15 (Forster); 5/5/21 PM Tr. 53:18–24 (Christopher); 5/11/21 AM Tr. 47:14–19 (Jim)). In sum, adding a benign substance that is regulated by the FDA and serves only as a medium to administer the cells is insufficient to meet the jurisdictional requirement of the FDCA or PHS Act.

Similarly, the government's argument that Defendants' "manufacturing process also involves a collagenase product made in Indiana" misses the mark. Gov't Mot. Summ. J., Dkt. No. 45 at 27. The relevant question is whether the product sold and administered to the patient travelled in interstate commerce. Nor does the collagenase get administered to the patient during the procedure. *See* Dkt. No. 190 at 5 ¶ 15. Defendants, and all other physicians, regularly use tools that have travelled in interstate commerce in practicing medicine. But allowing the mere existence of any interstate medical implement to bring the physician's practice under the FDCA would intrude into the states' long-recognized power to regulate the practice of medicine. *See, e.g.*, 21 U.S.C. § 360(g) (excluding "practitioners licensed by law to prescribe or administer drugs or devices and who manufacture, prepare, propagate, compound, or process drugs or devices solely for use in the course of their professional practice."); *Gibbons v. Ogden*, 22 U.S. 1, 205 (1824) (noting that health laws "are considered as flowing from the acknowledged power of a State, to provide for the health of its citizens"); *Dent v. West Virginia*, 129 U.S. 114, 128 (1889) (holding that it was the province of the state to determine licensing requirements for physicians);

*Hawker v. New York*, 170 U.S. 189, 193–94 (1898) ("Care for the public health is something confessedly belonging to the domain of [the State's] power.").

### (b)    Sale Requirement

Moreover, Defendants do not charge or receive money for the SVF Cells or Expanded MSCs—nor do they hold either the SVF Cells or Expanded MSCs for sale on the public market, as contemplated by the statute. Unlike the states, the FDA's power to regulate the practice of medicine is specific and limited and must be supported by "unmistakably clear" statutory language. *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 3 F.4th 390, 399 (D.C. Cir. 2021) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989)). The statutory language here is clear, only not in the government's favor. The FDCA and the PHS Act make clear that the FDA's authority is limited to drugs that are sold and have traveled in interstate commerce. Cells that are not purchased, but removed from a patient in California and administered back into that same patient in California do not fit that criteria. The payment is for the surgical procedure, and like any other doctor's visit that falls well outside the province of the federal government. Therefore, this Court should decline to extend the FDA's authority to regulate the procedures at issue here.

### 2.    Defendants are exempt from FDA registration requirements

Even if the SVF Cells and Expanded MSCs were drugs that travelled through interstate commerce and held for sale—they are not—Defendants are expressly exempted from FDA registration requirements as medical practitioners who process drugs "solely for use in the course of their professional practice." 21 U.S.C. § 360.

### C.    On The Record And Assuming The Government Can Overcome The Regulatory And Statutory Failings, It Has Not Shown A Violation.

Separate and apart from these arguments, the government has failed to prove that Defendants have violated the PHS Act or the FDCA.

Absent a recognized exemption, like Section 360, establishments that manufacture an HCT/P under 21 C.F.R. § 1271.10 must register with the FDA,

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

submit to the FDA a list of each HCT/P manufactured, and comply with the other requirements contained in Section 1271. The most notable of these other requirements, and the one at issue here, is the requirement to use "current good tissue practice." 21 C.F.R. § 1271.150. Current good tissue practice is directed at preventing the introduction, transmission, and spread of communicable disease. *Id.* Defendants meet that standard: the procedure is a virtually closed procedure performed by licensed physicians in an AAAHC-accredited facility, and every material used is an FDA-approved drug or FDA-cleared device. Dkt. No. 190 at 6 ¶ 15–16, 19. Further, all cells in question are for autologous use only, creating no risk for the spread of communicable disease.

As to the FDCA, the government claims Defendants have violated the FDCA in three ways. *First*, the government claims Defendants have violated 21 U.S.C. § 331(k) by "causing the adulteration of products." Dkt No. 1 ¶ 55. *Second*, the government claims Defendants have violated that same statute by "causing the misbranding of CSCTC products." *Id.* at ¶ 56. *Third*, the government claims Defendants have "receiv[ed] drugs that are misbranded in violation of 21 U.S.C. § 331(c)." To prove its first claim, the government must show that "the methods used in, or the facilities or controls used for, the manufacture of the drug are not in conformity with current Good Manufacturing Practices." 21 U.S.C. §§ 331(k), 351(a)(2)(B). To prove its second and third claims, the government must show that the procedures do not contain "adequate directions for use of the symbol 'Rx.'" 21 U.S.C. §§ 352(f), 352(b)(2).

### 1.    <u>The government failed to prove adulteration</u>

The adulteration claims fail. Dr. Lander is a board-certified physician regulated by the State of California Medical Board whose facilities comply with all health and safety standards established for outpatient procedures. (Ex. 300; Exs. 302–322; 5/11/21 AM Tr. 95:10–15, 98:8–18 (Berman); 5/12/21 PM Tr. 51:19–52:21, 54:25–55:4 (Lander)). The Beverly Hills facility is accredited by the Accreditation

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

Association for Ambulatory Health Care ("AAAHC") per California law. (Ex. 302; 5/11/21 AM Tr. 98:23–100:10 (Berman)). Defendants met all requirements under California Health & Safety Code §§ 1248.1(g) and 1248.15(a), and the government introduced no evidence to the contrary.

Further, all materials used to isolate SVF Cells are FDA-approved drugs or FDA-cleared devices. (Exs. 384, 385 (clearance for Lipokit); 386 (clearance for Celltibator); 387, 388, 389, 390 (approval for dextrose lactated ringers solution); 391, 392, 393, 394 (approval for saline); 395, 396, 410 (proof of GMP-grade Liberase); 5/11/21 PM Tr. 13:10-15) (Berman)). The SVF Surgical Procedure is a virtually closed procedure with the exception of slight exposure to operating room air through the aperture of a syringe. (5/11/21 AM Tr. 21:9–16 (Berman)).

The Government's failure of proof is even more pronounced for the Expanded MSC Procedure. As to the Expanded MSC Procedure, each of the government's investigators confirmed at trial that there was no evidence of adulteration. Defendants utilize an FDA-registered, GTP-compliant tissue bank that has been inspected by the FDA. *See* Dkt. No. 190 at 8 at ¶ 28. The FDA itself documented no deficiencies relating to the Expanded MSC Surgical Procedure during its 2017 inspection. (5/5/21 PM Tr. 36:1–9, 37:6–19 (Forster)). The Court has already found that the government failed to prove adulteration of the Expanded MSCs and that ruling should stand. Dkt. No. 190 at 8 at ¶ 29.

## 2. The government failed to prove misbranding

The misbranding claims fail because Defendants provide comprehensive directions for use. Defendants have drafted multiple surgical and physician user manuals with detailed step-by-step instructions on how to extract, isolate, and re-implant the SVF Cells, including contraindications and sterilization techniques. (*See, e.g.*, Exs. 303–322). These manuals, based on the doctors' combined 70 years of surgical experience, were provided with the CSN-Time Machine® centrifuge and incubator and are intended to give physicians "uniform ability to follow a particular

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

treatment" protocol. (5/11/21 PM Tr. 18:10–14; 19:6–12 (Berman)). Unlike others who are unable to provide adequate directions for instructions to a layperson, Defendants' clinical studies have continuously operated under independent IRB protocol and review, and these protocols are provided to other physicians, not to any layperson. *Cf. U.S. v. Cole*, 84 F. Supp. 3d 1159 (D. Or. 2015) (finding misbranding where dietary supplement manufacturer could not provide adequate instructions to a layperson).

The government's contention that the "Rx" symbol is required is irrational in this context. The SVF Cells are not placed in any container for preservation, storage, or later use; they are transferred between sterile syringes during washing phases, labeled with the patient's name and date per surgical protocols, and immediately re-implanted. Only licensed medical doctors can perform the procedure, and all CSN affiliates agree to follow the established protocols. (Dkt. No. 113-1, Stipulated Fact No. 4; Ex. 430; 5/11/21 PM Tr. 59:4–13 (Berman)). It would be absurd to argue that mere exclusion of an "Rx" on a syringe that never leaves a surgical suite causes misbranding.

In regards to misbranding, Defendants do not label the Expanded MSCs—a third-party tissue bank does—and no labeling of the Expanded MSCs occurs in Defendants' medical facilities. *Id.* at 7 at ¶ 23. The government presented no evidence that Defendants label or mislabel any regulated material in connection with this procedure, nor any evidence that the labeling received from the GTP facility is deficient. *Id.* 8–9 at ¶ 32. The government's investigators did not collect samples of the labeling, including whether it included the label "Rx," and the FDA Investigator admitted she found no deviations in GTP regulations. (5/5/21 PM Tr. 37:4–19 (Forster)). Any misbranding argument is entirely speculative. The Court already ruled that the government did not prove mislabeling of the Expanded MSCs and that ruling should stand.  Dkt. No. 190 at 8–9 at ¶ 32.

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF

## V.   CONCLUSION

Defendants seek to provide patients with safe, revolutionary, healing medical care at as little cost to patients as possible. The government's enforcement action exceeds its constitutionally limited regulatory authority by violating Defendants' due process rights, interferes with their local practice of medicine, and limits patients' access to safe treatments and control over the own cells in their bodies. The plain language of the FDCA and the PHS Act do not permit this overreach. Yet, even if the cells involved in these procedures fall under the jurisdiction of the federal government, this Court should require their regulation under Section 361 of the PHS Act and recognize Defendants' exemption under Section 360. Similar procedures are regulated under this section, and the government's selective enforcement against Defendants is an arbitrary and capricious application of the regulatory scheme. Finally, even if the cells are drugs subject to regulation under the FDCA, the Court should hold that the government has failed to meet its burden to prove Defendants have violated the law. For the foregoing reasons, Defendants respectfully request that this Court enter judgment in their favor.

Dated: July 10, 2026

Respectfully Submitted,

JONES DAY

By: */s/ Ramanda R. Luper*
    Celeste M. Brecht
    Ramanda R. Luper

Attorneys for Defendants
CALIFORNIA STEM CELL
TREATMENT CENTER, INC., CELL
SURGICAL NETWORK
CORPORATION, ELLIOT B.
LANDER, M.D., and MARK
BERMAN, M.D.

Case No. 5:18-CV-01005-JGB-KKx
DEFENDANTS' OPENING BRIEF